1 | Bonnie Glatzer, State Bar No. 147804
bglatzer@nixonpeabody.com
2 | Jade Butman, State Bar No. 235920
jbutman@nixonpeabody.com
3 | NIXON PEABODY LLP
One Embarcadero Center, 32nd Floor
4 | San Francisco, CA 94111
Tel: 415-984-8200
5 | Fax: 415-984-8300

6 | Attorneys for Defendant
SIMS GROUP USA CORPORATION
7 |

8 |

9 | **UNITED STATES DISTRICT COURT**

10 | **NORTHERN DISTRICT OF CALIFORNIA**

11 |

12 | PAEA SANFT, individually and on
behalf of all others similarly situated,

13 | Plaintiff,

14 |

15 | vs.

16 | SIMS GROUP USA CORPORATION
dba SIMS METAL MANAGEMENT, a
California Corporation, and DOES 1 -
17 | 50, inclusive,

18 | Defendants.

19 |

20 |

Case No.

**NOTICE OF REMOVAL OF
CIVIL ACTION UNDER 28 U.S.C.
§ 1331 AND 28 U.S.C. § 1441(a);
EXHIBITS**

**[San Mateo Superior Court Case
No. 19CIV06454]**

[Filed concurrently with Civil Cover
Sheet, Notice of Related Case, Notice
of Interested Parties, Declaration of
Jade Butman]

Complaint Filed: October 31, 2019

21 | **TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO**

22 | **PLAINTIFF PAEA SANFT:**

23 | **PLEASE TAKE NOTICE** that Defendant Sims Group USA Corporation

24 | ("Defendant") files this Notice of Removal. The above-entitled case is a civil action

25 | over which this Court has original jurisdiction pursuant to 28 U.S.C. section 1331 and

26 | is one that may be properly removed to this Court pursuant to 28 U.S.C. section 1441.

27 | In compliance with 28 U.S.C. section 1446(a), Defendant asserts the following

28 | grounds for removal:

1.    On October 31, 2019, Plaintiff Paea Sanft ("Plaintiff") commenced the aforementioned action against Defendant by filing a Class Action Complaint Pursuant to California Code of Civil Procedure section 382 in the Superior Court of the State of California, County of San Mateo, entitled *Paea Sanft v. SIMS Group USA Corporation dba SIMS Metal Management,* Case No. 19CIV06454 (the "State Court Action"). Plaintiff filed the State Court Action individually and on behalf of all other similarly situated current and former employees of Defendant. Plaintiff purports to allege causes of action for failure to pay all earned overtime wages by not including shift pay in the regular rate of pay, failure to pay overtime wages pursuant to the Fair Labor Standards Act, failure to provide meal periods, failure to provide rest periods, failure to pay timely wages, failure to provide accurate itemized wage statements, and violation of the Business and Professions Code.

2.    True and correct copies of Plaintiff's Summons and Complaint, and related notices and orders from the State Court Action, are attached as **Exhibit A**.

3.    Defendant was served with the Complaint on November 18, 2019.

4.    Defendant filed an Answer in the State Court Action. A true and correct copy of Defendant's Answer to Plaintiff's Complaint for Damages is attached as **Exhibit B**.

5.    This Notice is timely filed within thirty (30) days of initial service of the Summons and Complaint on any defendant. See 28 U.S.C. § 1446(b).

6.    By filing this Notice of Removal, Defendant does not waive any defenses that may be available to it.

7.    Defendant Sims Group USA Corporation is a corporation existing under the laws of Delaware, with its principal place of business in Richmond, California.

8.    Plaintiff is a resident of the State of California.

**_Federal Question Jurisdiction_**

9.    United States District Courts have original jurisdiction over actions under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 216(b).

1    10.    Additionally, United States District Courts have original jurisdiction
2 over actions under section 301 of the Labor Management Relations Act ("LMRA").
3 29 U.S.C. § 185(a).

4    11.    Based on the following facts, the State Court Action is, therefore, a civil
5 action over which this Court has federal question jurisdiction pursuant to 28 U.S.C.
6 section 1331, and is one that may be properly removed to this Court under 28 U.S.C.
7 section 1441, in that Plaintiff asserts a cause of action arising under federal law –
8 namely, an overtime claim pursuant to FLSA (29 U.S.C. § 201, et seq.).

9    12.    Additionally, the State Court Action is a civil action over which this
10 Court has federal question jurisdiction pursuant to 28 U.S.C. section 1331, and is one
11 that may be properly removed to this Court under 28 U.S.C. section 1441, in that some
12 or all of Plaintiff's causes of action arise under and are completely preempted by
13 LMRA section 301.

14    a.    Plaintiff is, and throughout the relevant period was, a member of
15 a collective bargaining unit represented by Teamsters Local No. 853 ("Teamsters
16 853"), a labor organization as defined in the National Labor Relations Act.  29 U.S.C.
17 § 152(5).

18    b.    Plaintiff alleges that he was employed by Defendant as a non-
19 exempt employee with various titles during the period of June 1999 through
20 September 2019.  (Ex. A ("Compl.") ¶ 6.) Plaintiff further alleges that he was and is
21 a victim of the policies, practices, and customs of Defendant that have deprived
22 Plaintiff of the rights guaranteed by the Fair Labor Standards Act, 29 U.S.C.
23 section 206 (minimum wage) and 29 U.S.C. section  207 (overtime); California Labor
24 Code section 510 (overtime), section 1194 (minimum wage), section 512 (meal
25 period) section 226.7 (premium for missed meal or rest periods), sections 201-203
26 (failure to pay timely wages), section 226 (failure to provide accurate itemized wage
27 statements), and a derivative claim under the Business and Professions Code,
28 section 17200, et seq. (Compl. ¶ 11.) Plaintiff further alleges that Defendant failed to

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331,1441(a)

1  factor shift pay into the regular rate of pay for purposes of paying overtime wages.
2  (Compl. ¶ 30.) Plaintiff further alleges Defendant failed to list the applicable rate and
3  hours with respect to "shift differential" wages on wage statements. (Compl. ¶¶ 74-
4  75.)

5      c.    If, as Plaintiff alleges, the "shift differential" (or the "premium" as
6  the Collective Bargaining Agreement ("CBA") calls it) is in question, then Plaintiff's
7  overtime claim is a function of the CBA and requires an interpretation of the same.
8  A true and correct copy of the CBA between Defendant and Teamsters 853 effective
9  August 16, 2017 through August 15, 2021 is attached as **Exhibit C**.

10      d.    Additionally, some federal statutes have such "'extraordinary pre-
11  emptive power' that they convert[ ] an ordinary state common law complaint into one
12  stating a federal claim for purposes of the well-pleaded complaint rule." *Retail Prop.*
13  *Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir.
14  2014) (quoting *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987).) LMRA section
15  301 is one of only three instances of "complete jurisdiction," and when raised in a
16  complaint, must be construed as arising under federal law. *Id.* at 947, 948, n. 5 (citing
17  *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 558-62
18  (1968).)

19      e.    "To determine whether a state law claim is completely preempted
20  under section 301, the relevant inquiry is whether resolution of the claim requires
21  interpretation of a collective bargaining agreement." *Milne Employees Association v.*
22  *Sun Carriers*, 960 F. 2d 1401, 1406 (9th Cir. 1991), cert denied, 113 S. Ct. 2927
23  (1993) ); *accord Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108
24  (9th Cir. 2000) ("in order to give the proper range of § 301's policies of promoting
25  arbitration and the uniform interpretation of collective bargaining agreement
26  provisions, § 301 'complete preemption' must be construed to cover 'most state-law
27  actions that require interpretation of labor agreements.'") (quoting *Associated*
28  *Builders & Contractors, Inc. v. Local 302 Int'l Bhd. of Elec. Workers*, 109 F.3d 1353,

1356 (9th Cir 1997)).[1]  Section 301's preemptive effect reaches all state law causes of action that are (1) founded on rights created by a collective bargaining agreement, *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 394 (1987), or (2) substantially dependent on the analysis of a collective bargaining agreement. *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 214-20 (1985).  An application of state law is preempted by section 301 "if such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 413 (1988).

f.      The two driving reasons for the preemption doctrine are: (1) "preventing parties' efforts to renege on their arbitration promises by 'relabeling' as tort suits actions simply alleging breaches of duties assumed in [CBAs]" and (2) "preserving a central tenet of federal labor-contract law...that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Kobold v. Good Samaritan Regional Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2016).

g.      Plaintiff's claims for violation of California Labor Code sections 201-203, 226, 510, 558, and 1194; and the Fair Labor Standards Act at section 216, *et seq*.; and the derivative claim for violation of the Unfair Practices Act, are direct claims for breach of a collective bargaining agreement since Plaintiff effectively

---

[1] The Supreme Court has long explained the necessity of section 301 preemption:

> [The] subject matter of § 301(a) 'is peculiarly one that calls for uniform law.' . . . The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation . . . [and] might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes.

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (U.S. 1985) (quoting *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962)).

1  alleges he was not properly compensated for shift pay and overtime under the CBA.
2  Courts have held that LMRA section 301 preempts these claims. *See Bernardi v.*
3  *Amtech/San Francisco Elevator Co.*, 2008 U.S. Dist. LEXIS 120634 at *11 (N.D. Cal.
4  June 5, 2008) (where plaintiffs argue that their claim only requires the district court
5  to look at the agreement rather than interpret it and defendants disagree, then the
6  parties are in dispute regarding the meaning of the CBA, which requires more than a
7  mere look at the CBA); *Cornn v. UPS*, 2004 U.S. Dist. LEXIS 20578 at *5 (N.D. Cal.
8  Oct. 5, 2004) (Court could not determine whether employer complied with its
9  statutory obligations to pay plaintiffs' wages without interpreting the CBA to
10 determine what was actually agreed upon).

11              h.       Courts also hold that other alleged violations of the California
12 Labor Code are preempted by LMRA section 301 when the parties disagree on the
13 meaning of terms in a collective bargaining agreement that are necessary for a court
14 to determine the plaintiff's claim. *See Firestone v. So. Cal. Gas Co.*, 219 F.3d 1063,
15 1066 (9th Cir. 2000); *see also Santiago v. Aramark Uniform and Career Apparel,*
16 *LLC,* 2012 U.S. Dist. LEXIS 165211 at *8-11 (N.D. Cal. 2012).  In *Firestone*, the
17 Ninth Circuit affirmed the district court's holding that the plaintiffs' California-law
18 overtime claim was preempted because it could not determine whether the plaintiffs
19 were receiving a "premium wage rate" for overtime under the collective bargaining
20 agreement without interpreting that agreement to determine what the regular rate was.
21 *Firestone*, 219 F.3d at 1066.  The Ninth Circuit reasoned that it had to interpret the
22 collective bargaining agreement because the plaintiffs and employer reached different
23 conclusions about the regular rate based on their understandings of the collective
24 bargaining agreement. *Id.*  Similarly, in *Santiago*, plaintiff's overtime claim was
25 preempted because the court determined it needed to interpret the applicable
26 collective bargaining agreement to determine whether the wage formula set forth in
27 the collective bargaining agreement constituted a "premium wage rate." *Santiago*,
28 2012 WL 5868954 at *11.

1           i.      The same is true here as in *Firestone* and *Santiago*.  Plaintiff
2   claims that he and Class Members were entitled to additional non-discretionary
3   incentive pay, including "shift differential" wages, in work weeks in which Plaintiff
4   and Class Members also earned overtime wages. (*E.g.* Complaint, ¶ 30.)  Defendant
5   notes that, according to the CBA, employees receiving above-scale premium rates
6   receive negotiated cents-per-hour increases only at the employer's option, and the
7   employer may exercise the option for each employee on an individual basis. (*See*
8   Exhibit C, Section VIII. G.)  Moreover, to determine whether and when shift pay is
9   owed, one must review the CBA to determine whether the employee's work hours
10  qualify for the differential.  For example, if an employee commences work during
11  first shift hours, but completes work during the second shift hours, for which hours,
12  if any, must the employee receive shift differential? (*See* Exhibit C, Section V. A, B.)
13  In addition, the claims are alleged on behalf of six putative classes: (1) the overtime
14  class; (2) the wage statement class; (3) the waiting time penalty class; (4) the meal
15  period class; (5) the rest period class; and (6) the unfair business practice class.  As
16  Plaintiff has defined the putative classes, putative class members include employees
17  outside of Plaintiff's bargaining unit whose wages, hours and working conditions are
18  covered by different collective bargaining agreements.  Thus, determination of the
19  class claims will require that the Court construe multiple collective bargaining
20  agreements. The necessity of analyzing these collective bargaining agreement terms
21  to resolve Plaintiffs' claims as well as Defendant's defenses means that state law is
22  preempted as to Plaintiffs' claims because "questions relating to what the parties to a
23  labor agreement agreed, and what legal consequences were intended to flow from
24  breaches of that agreement must be resolved by references to uniform federal law...."
25  *Allis—Chalmers Corp. v. Lueck*, 471 U.S. at 211.  To succeed on his claim, Plaintiff
26  must demonstrate that Defendant did not follow the CBA, which will require the
27  Court to interpret the provisions of the CBA.
28

1          j.     Where interpretation of the CBA is required to establish a
2  plaintiff's claim, the claim is preempted by Section 301. There is no way the Court
3  can evaluate Plaintiff's claims without interpreting the CBA. Because Plaintiffs'
4  state-law claims for shift pay and overtime will require interpretation of the CBA,
5  such claims are completely preempted under the LMRA, and this Court has
6  jurisdiction pursuant to 28 U.S.C. 1331. *See Retail Prop. Trust*, 768 F.3d at 947.

7          13.    To the extent that Plaintiff's remaining causes of action and/or claims do
8  not arise under federal law, they are related transactionally to claim(s) over which this
9  Court does have federal question jurisdiction. Accordingly, such other claims are also
10 removable and subject to this Court's supplement jurisdiction pursuant to 28 U.S.C.
11 sections 1441(c) and 1367(a).

12         14.    In accordance with 28 U.S.C. section 1446(d), Plaintiff, through his
13 counsel of record, and the Clerk of the Superior Court, shall be timely served with
14 copies of this Notice of Removal.

15         15.    For all of the foregoing reasons, Defendant respectfully submits that the
16 State Court Action is removable to this Court under 28 U.S.C. sections 1331 and
17 1441(a).

18         WHEREFORE, Defendant Sims Group USA Corporation prays that this action
19 be removed from the Superior Court for the County of San Mateo to this Court.

20

21 Dated:  December 13, 2019                NIXON PEABODY LLP

22

23                                    By:

24                                        Bonnie Glatzer
                                          Jade Butman
25                                        Attorneys for Defendant
                                          SIMS GROUP USA CORPORATION
26

27

28

# Exhibit A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY |
|---|---|
| | (SOLO PARA USO DE LA CORTE) |

**SAN MATEO COUNTY**

OCT 31 2019

Clerk of the Superior Court

By _____
DEPUTY CLERK

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SIMS GROUP USA CORPORATION dba SIMS METAL MANAGEMENT, a California Corporation, and DOES 1-50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

PAEA SANFT, individually and on behalf of all others similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case. ¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: | CASE NUMBER (Número del Caso): |
|---|---|
| (El nombre y dirección de la corte es): San Mateo Superior Court 400 County Center Redwood City, CA 94063 | 19CIV06454 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: (El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
JAMES HAWKINS APLC 9880 Research Drive Suite 200 Irvine, CA 92618 Tel: 949-387-7200

| DATE: | OCT 31 2019 | | NEAL TANIGUCHI | Clerk, by | | , Deputy |
|---|---|---|---|---|---|---|
| (Fecha) | | | | (Secretario) | | (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other (specify):

4. ☐ by personal delivery on (date)

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

ORIGINAL    FAXED

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JAMES HAWKINS APLC
James R. Hawkins, Esq. (#192925)
Gregory Mauro, Esq. (#222239)
Michael Calvo, Esq. (#314986)
9880 Research Drive, Suite 800
Irvine, CA 92618
Tel.: (949) 387-7200
Fax: (949) 387-6676
Email: James@jameshawkinsaplc.com
Email: Greg@jameshawkinsaplc.com
Email: Michael@jameshawkinsaplc.com

Attorneys for Plaintiff PAEA SANFT,
individually and on behalf of all others similarly situated

**FILED**
**SAN MATEO COUNTY**

OCT 31 2019

Clerk of the Superior Court
By _____
DEPUTY CLERK

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF SAN MATEO

PAEA SANFT, individually and on behalf of
all others similarly situated,

Plaintiff,

v.

SIMS GROUP USA CORPORATION dba
SIMS METAL MANAGEMENT, a California
Corporation,  and DOES 1-50, inclusive,

Defendants.

CASE NO.: **19CIV06454**

Assigned For All Purposes To:
Judge:
Dept.:

**CLASS ACTION COMPLAINT
PURSUANT TO CALIFORNIA CODE OF
CIVIL PROCEDURE §382 FOR:**

1.   Failure to Accurately Pay Overtime as
     Required by Labor Code § 510;
2.   Failure to Provide Meal Periods as
     Required by Labor Code §§ 226.7,  512
     and IWC Wage Orders
3.   Failure to Provide Rest Periods as
     Required by Labor Code §§ 226.7, 512
4.   Failure to Pay Timely Wages Required
     by Labor Code § 203
5.   Failure to Provide Accurate Itemized
     Wage Statements as Required by Labor
     Code § 226
6.   Violation of Business & Professions
     Code § 17200, et seq.
7.   Failure to Pay Overtime Wages
     ("FLSA")

**DEMAND FOR JURY TRIAL**



CLASS ACTION COMPLAINT

1    Plaintiff PAEA SANFT ("Plaintiff"), individually and on behalf of all others similarly

2  situated (hereinafter collectively referred to as the "Class" or "Class Member"), hereby files this

3  Complaint against Defendants SIMS GROUP USA CORPORATION dba SIMS METAL

4  MANAGEMENT; and DOES 1-50, inclusive (collectively "Defendants") and alleges on

5  information and belief as follows:

6                              I.    **JURISDICTION AND VENUE**

7    1.    This class action is brought pursuant to California Code of Civil Procedure §382.

8  The monetary damages and restitution sought by Plaintiff exceed the minimum jurisdiction limits

9  of the California Superior Court and will be established according to proof at trial.

10   2.    This Court has jurisdiction over this action pursuant to the California Constitution

11 Article VI §10, which grants the California Superior Court original jurisdiction in all causes

12 except those given by statute to other courts.  The statutes under which this action is brought do

13 not give jurisdiction to any other court.

14   3.    This Court has jurisdiction over Defendants because, upon information and belief,

15 each Defendant either has sufficient minimum contacts in California, or otherwise intentionally

16 avails itself of the California market so as to render the exercise of jurisdiction over it by the

17 California Courts consistent with traditional notions of fair play and substantial justice.

18   4.    The California Superior Court also has jurisdiction in this matter because the

19 individual claims of the members of the Classes herein are under the seventy-five thousand dollar

20 ($75,000.00) jurisdictional threshold for Federal Court and the aggregate claim, including attorneys'

21 fees, is under the five million dollar ($5,000,000.00) threshold of the Class Action Fairness Act of

22 2005. Further, there is no federal question at issue, as the issues herein are based solely on California

23 statutes and law, including the Labor Code, IWC Wage Orders, CCP, California Civil Code ("CC")

24 and B&PC.

25   5.    Venue is proper in this Court because upon information and belief, one or more of

26 the Defendants, reside, transact business, or have offices in this County and/or the acts or

27 omissions alleged herein took place in this County.

28 ///

## II.   PARTIES

6.      Plaintiff, PAEA SANFT, was at all times relevant to this action, a resident of Palo Alto, California.  Plaintiff was employed by Defendants in approximately June 1999 as a Non-Exempt Employee. While employed by Defendant, Plaintiff held various titles including but not limited to, Labor, Maintenance, Lead Shift, Heavy Equipment Operator, Maintenance, and Equipment Operator until his separation from Defendants' employ in approximately September 2019.

7.      Defendants SIMS GROUP USA CORPORATION dba SIMS METAL MANAGEMENT, operates as a global metal recycler. Defendants engaged in the processing, buying, and selling of ferrous and non-ferrous recycled materials. Plaintiff estimates there are in excess of 100 Non-Exempt Employees who work or have worked for Defendants over the last four years.

8.      Other than identified herein, Plaintiff is unaware of the true names, capacities, relationships, and extent of participation in the conduct alleged herein, of the Defendants sued as DOES 1 through 50, but is informed and believes and thereon alleges that said defendants are legally responsible for the wrongful conduct alleged herein and therefore sues these defendants by such fictitious names.  Plaintiff will amend this complaint when their true names and capabilities are ascertained.

9.      Plaintiff is informed and believes and thereon alleges that each defendant, directly or indirectly, or through agents or other persons, employed Plaintiff and other members of the Class, and exercised control over their wages, hours, and working conditions.   Plaintiff is informed and believes and thereon alleges that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other defendants.

### III.  CLASS ACTION ALLEGATION

10.     Plaintiff brings this action individually and on behalf of all others similarly situated as a class action pursuant to Code of Civil Procedure § 382.  The members of the Class

1  are defined as follows:

2   All persons who have been employed by Defendants as Non-Exempt Employees or
3   equivalent positions, however titled, in the state of California within four (4) years from
    the filing of the Complaint in this action until its resolution. (collectively referred to as the
4   "Class" or "Plaintiff's Class" or "Class Members").

5   11.   Plaintiff also seeks to represent the subclass(es) composed of and defined as
6  follows:

7   **Sub-Class 1:** All Class Members who are or were employed by Defendants who worked in
8   excess of six or ten hours in a work day but were not provided with a timely, uninterrupted,
    duty-free thirty-minute meal period (hereinafter collectively referred to as the "Meal
9   Period Subclass").

10
11  **Sub-Class 2:** All Class Members who are or were employed by Defendants who worked in
    excess of three and a half (3.5) or ten hours in a work day but were not authorized and
12  permitted a rest period (hereinafter collectively referred to as the "Rest Period Subclass").

13  **Sub-Class 4:**  All Class Members who are or were employed by Defendants at any time
14  between October 2018 and the present and who received wage statements from Defendant
    (hereinafter collectively referred to as the "Wage Statement Subclass").
15

16  **Sub-Class 5:** All Class Members who have been employed by Defendants at any time
    between August 2016 and the present and have separated their employment (hereinafter
17  collectively referred to as the "Waiting Time Penalty Subclass").

18
19  **Sub-Class 6:** All Class Members who are or were employed by Defendants and who
    worked more than eight (8) hours in a workday or more than forty (40) hours in a
20  workweek (hereinafter collectively referred to as the "Overtime Subclass").

21
22  **Sub-Class 7:** All Class Members who are or were employed by Defendants and subject to
    Defendant's Unfair Business Practices (hereinafter collectively referred to as the "Unfair
    Business Practice Subclass").

23  12.   Plaintiff reserves the right under California Rule of Court 3.765(b) and other
24  applicable laws to amend or modify the class definition with respect to issues or in any other
25  ways.  Plaintiff is a member of the Class as well as each of the Sub-Classes.

26  13.   The term "Class" includes Plaintiff and all members of the Class and each of the
27  Sub-Classes, if applicable. Plaintiff seeks class-wide recovery based on the allegations set forth in
28  this complaint.

1      14.     There is a well-defined community of interest in the litigation and the proposed

2 Class is easily ascertainable through the records Defendants are required to keep.

3      15.     <u>Numerosity</u>. The members of the Class are so numerous that individual joinder

4 of all of them as Plaintiff is impracticable. While the exact number of the Class members is

5 unknown to Plaintiff at this time, Plaintiff is informed and believes and thereon alleges that there

6 are at least 100 (one hundred) Class members.

7      16.     <u>Commonality</u>. Common questions of law and fact exist as to all Class members

8 and predominate over any questions that affect only individual members of the Class. These

9 common questions include, but are not limited to:

10      i.     Whether Defendants failed to accurately incorporate the value of shift

11 differentials into the regular rate of pay for overtime calculation purposes to Plaintiffs and Class

12 Members for hours Plaintiffs and Class Members worked in excess of eight (8) hours per day

13

14 and/or forty (40) hours per week, and double time wages for work over twelve (12) hours in a day;

15      ii.     Whether Defendants failed to accurately pay overtime to Plaintiff and Class

16 Members;

17      iii.     Whether Defendants violated Labor Code sections 226.7, 512, and

18 applicable IWC Wage Orders, by failing to authorize and permit daily rest periods to Plaintiff and

19 Class Members for every four hours or major fraction thereof worked and failing to compensate

20 said employees one hours wages in lieu of rest periods;

21      iv.     Whether Defendants violated Labor Code sections 226.7, 512 and

22 applicable IWC Wage Orders, by failing to provide a meal period to Plaintiff and Class Members

23 on days they worked work periods in excess of six and 10 hours and failing to compensate said

24 employees one hour wages in lieu of meal periods;

25      v.     Whether Defendants failed to maintain accurate time record including

26 recording Plaintiff and Class Members' meal periods pursuant to Labor Code sections 1174.5 and

27 the applicable IWC Wage Orders;

28      vi.     Whether Defendants provided accurate itemized wage statements pursuant

1  to Labor Code section 226;

2      vii.      Whether Defendants violated Business and Professions Code and Labor
3  Code sections 201-202, 510, 226, 226.7, 266.3, 512, 1174, 1174.5, 1175, and applicable IWC
4  Wage Orders which violation constitutes a violation of fundamental public policy; and

5      viii.      Whether Plaintiff and the Members of the Plaintiff Class are entitled to
6  equitable relief pursuant to Business and Professions Code section 17200, *et. seq.*

7      ix.      Whether Plaintiff and the Members of the Plaintiff Class are entitled to
8  relief in the form of back wages, penalties and interest for failure to pay minimum wages pursuant
9  to Labor Code sections 558, 1194 and 1197.

10      17.      Typicality.  Plaintiff's claims herein alleged are typical of those claims which
11  could be alleged by any member of the Class and/or Subclass, and the relief sought is typical of
12  the relief which would be sought by each member of the Class and/or Subclass in separate actions.
13  Plaintiff and all members of the Class and or Subclass sustained injuries and damages arising out
14  of and caused by Defendants' common course of conduct in violation of California laws,
15  regulations, and statutes as alleged herein.

16      18.      Adequacy.  Plaintiff is qualified to, and will fairly and adequately protect the
17  interests of each member of the Class and/or Subclass with whom she has a well defined
18  community of interest and typicality of claims, as demonstrated herein.  Plaintiff acknowledges an
19  obligation to make known to the Court any relationships, conflicts, or differences with any
20  member of the Class and/or Subclass. Plaintiff's attorneys and the proposed Counsel for the Class
21  and Subclass are versed in the rules governing class action discovery, certification, litigation, and
22  settlement and experienced in handling such matters.  Other former and current employees of
23  Defendants may also serve as representatives of the Class and Subclass if needed.

24      19.      Superiority.  A class action is superior to other available means for the fair and
25  efficient adjudication of the claims of the Class and would be beneficial for the parties and the
26  court.  Class action treatment will allow a large number of similarly situated persons to prosecute
27  their common claims in a single forum, simultaneously, efficiently, and without the unnecessary
28  duplication of effort and expense that numerous individual actions would require.  The damages

1   suffered by each Class member are relatively small in the sense pertinent to class action analysis,
2   and the expense and burden of individual litigation would make it extremely difficult or
3   impossible for the individual Class Members to seek and obtain individual relief. A class action
4   will serve an important public interest by permitting such individuals to effectively pursue
5   recovery of the sums owed to them. Further, class litigation prevents the potential for inconsistent
6   or contradictory judgments raised by individual litigation.

7       20.    Public Policy Considerations: Employers in the state of California violate
8   employment and labor laws everyday. Current employees are often afraid to assert their rights out
9   of fear of direct or indirect retaliation. Former employees are fearful of bringing actions because
10  they believe their former employers may damage their future endeavors through negative
11  references and/or other means. The nature of this action allows for the protection of current and
12  former employees' rights without fear or retaliation or damage.

13                          **IV. FACTUAL ALLEGATIONS**

14      21.    At all times set forth herein, Defendants employed Plaintiff and other persons in the
15  capacity of non-exempt positions, however titled, throughout the state of California.

16      22.    Plaintiff is informed and believes Class Members have at all times pertinent hereto
17  been Non-Exempt within the meaning of the California Labor Code and the implementing rules
18  and regulations of the IWC California Wage Orders.

19      23.    Plaintiff is informed and believes that all Class Members are citizens of the state of
20  California.

21      24.    Defendants continue to employ Non-Exempt Employees, however titled, in
22  California and implement a uniform set of policies and practices to all non-exempt employees, as
23  they were all engaged in the generic of the processing, buying and/or sale of Defendant's recycled
24  metal materials.

25      25.    Plaintiff is informed and believes, and thereon alleges, that Defendants are and
26  were advised by skilled lawyers and other professionals, employees, and advisors with knowledge
27  of the requirements of California's wage and employment laws.

28      26.    On information and belief, during the relevant time frame, Plaintiff and Class

1   Members frequently worked well over eight (8) hours in a day and forty (40) hours in a work
2   week.

3       27.   During the relevant time frame, Defendants compensated Plaintiff and Class
4   Members based upon an hourly rate.

5       28.   On information and belief, during the relevant time frame, Plaintiff and Class
6   Members typically worked seven days a week. Plaintiff' and Class Members typical worked shifts
7   of anywhere 12 to 15 hours or more a day depending on the amount of work assigned to Plaintiff
8   and Class Members, but were not accurately paid double time wages for that work, as required
9   under California law.

10      29.   Plaintiff is informed and believes that the Class Members were required to keep
11  similar schedules.

12      30.   Plaintiff is informed and believes, and thereon alleges that, during the relevant time
13  frame, Defendant also compensated Plaintiffs and the Class Members with shift differentials but
14  failed to incorporate the shift differentials into the regular rate of pay for overtime calculation
15  purposes and therefore were provided inaccurate overtime pay.

16      31.   Plaintiff and the Class Members were regularly required to work shifts in excess of
17  five hours without being provided a lawful meal period and over ten hours in a day without being
18  provided a second lawful meal period as required by law.

19      32.   Indeed, during the relevant time, as a consequence of Defendants' staffing and
20  scheduling practices, lack of coverage, work demands, and Defendants' policies and practices,
21  Defendants frequently failed to provide Plaintiff and the Class Members timely, legally complaint
22  uninterrupted 30-minute meal periods on shifts over five hours as required by law.

23      33.   Similarly, as a consequence of Defendants' staffing and scheduling practices, lack
24  of coverage, work demands, and Defendants' policies and practices, Defendants frequently failed
25  to provide Plaintiff and the Class Members legally compliant second meal periods on shifts over
26  ten hours as required by law.

27      34.   On information and belief, Plaintiff and Class Members did not validly waive their
28  rights to meal periods under the law.

35.   Plaintiff and the Class Members were not provided with valid lawful on-duty meal periods.

36.   Despite the above-mentioned meal period violations, Defendants failed to compensate Plaintiff, and on information and belief, failed to compensate Class Members, one additional hour of pay at their regular rate as required by California law when meal periods were not timely or lawfully provided in a compliant manner.

37.   Plaintiff are informed and believe, and thereon alleges, that Defendants know, should know, knew, and/or should have known that Plaintiff and the other Class Members were entitled to receive premium wages based on their regular rate of pay under Labor Code §226.7 but were not receiving such compensation.

38.   In addition, during the relevant time frame, Plaintiff and the Non-Exempt Employees were systematically not authorized and permitted to take one net ten-minute paid, rest period for every four hours worked or major fraction thereof, which is a violation of the Labor Code and IWC wage order.

39.   Defendants maintained and enforced scheduling practices, policies, and imposed work demands that frequently required Plaintiff and Class Members to forego their lawful, paid rest periods of a net ten minutes for every four hours worked or major fraction thereof. Such requisite rest periods were not timely authorized and permitted as a result of Defendants' failure to provide relief for Plaintiff and Class Members to take their lawfully required breaks.

40.   Despite the above-mentioned rest period violations, Defendants did not compensate Plaintiff, and on information and belief, did not pay Class Members one additional hour of pay at their regular rate as required by California law, including Labor Code section 226.7 and the applicable IWC wage order, for each day on which lawful rest periods were not authorized and permitted.

41.   Defendants also failed to provide accurate, lawful itemized wage statements to Plaintiff and the Class Members in part because of the above specified violations. In addition, upon information and belief, Defendants omitted an accurate itemization of total hours worked, including hours worked for purposes of double time pay, premiums due and owing for meal and

1   rest period violations, gross pay and net pay figures from Plaintiff and the Class Members' wage
2   statements.  Defendants also failed to identify Plaintiff's and Class Members' shift differential pay
3   as no hourly rate or total hours are listed.

4        42.   Plaintiff are informed and believe, and thereon alleges, that at all times herein
5   mentioned, Defendants knew that at the time of termination of employment (or within 72 hours
6   thereof for resignations without prior notice as the case may be) they had a duty to accurately
7   compensate Plaintiff and Class Members for all wages owed including minimum wages, meal and
8   rest period premiums, and that Defendants had the financial ability to pay such compensation, but
9   willfully, knowingly, recklessly, and/or intentionally failed to do so in part because of the above-
10  specified violations.

11       43.   Upon information and belief, Defendants knew and or should have known that it is
12  improper to implement policies and commit unlawful acts such as:

13       (a)   requiring employees to work four (4) hours or a major fraction thereof without
14  being provided a minimum ten (10) minute rest period and without compensating the employees
15  with one (1) hour of pay at the employees' regular rate of compensation for each workday that a
16  rest period was not provided;

17       (b)   requiring employees to work in excess of five (5) hours or ten (10) hours per day
18  without being provided an uninterrupted thirty minute meal period and/or a second meal period,
19  and without compensating employees with one (1) hour of pay at the regular rate of compensation
20  for each workday that such a meal period was not provided;

21       (c)   failing to provide accurate itemized wage statements;

22       (d)   failing to timely pay Plaintiff and Class Members; and

23       (e)   conducting and engaging in unfair business practices.

24       44.   In addition to the violations above, and on information and belief, Defendants knew
25  they had a duty to compensate Plaintiff and Class Members for the allegations asserted herein and
26  that Defendants had the financial ability to pay such compensation, but willfully, knowingly,
27  recklessly, and/or intentionally failed to do so.

28       45.   Plaintiff and Class Members they seek to represent are covered by, and Defendants

1  are required to comply with, applicable California Labor Codes, Industrial Welfare Commission

2  Occupational Wage Orders (hereinafter "IWC Wage Orders") and corresponding applicable

3  provisions of California Code of Regulations, Title 8, section 11000 *et seq*.

## FIRST CAUSE OF ACTION

### FAILURE TO ACCURATELY PAY OVERTIME WAGES

### (Against All Defendants)

7      46.    Plaintiff incorporates and re-alleges each and every allegation contained above as

8  though fully set forth herein.

9      47.    At all times relevant, the IWC wage orders applicable to Plaintiffs and Class

10  Members' employment by Defendants provided that employees working for more than eight (8)

11  hours in a day or forty (40) hours in a work week are entitled to overtime compensation at the rate

12  of one and one-half times the regular rate of pay for all hours worked in excess of eight (8) hours

13  in a day or forty (40) hours in a work week.  An employee who works more than twelve (12) hours

14  in a day is entitled to overtime compensation at a rate of twice the regular rate of pay.

15      48.    Labor Code §510 codifies the right to overtime compensation at the rate of one and

16  one-half times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or

17  forty (40) hours in a work week and to overtime compensation at twice the regular rate of pay for

18  hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours in a day on the

19  seventh day of work in a particular work week.

20      49.    At all times relevant, Plaintiffs and Class Members regularly worked in excess of

21  eight (8) hours in a day and/or forty (40) hours in a week.

22      50.    At all times relevant, Defendants also failed to accurately pay overtime wages

23  owed to Plaintiffs and Class Members by failing to include the shift differentials into the regular

24  rates of pay for overtime calculation purposes.

25      51.    At all times relevant, Plaintiffs and Class Members regularly performed non-

26  exempt work in excess of 50% of the time, and thus, were subject to the overtime requirements of

27  the applicable IWC wage orders and the Labor Code.

28      52.    Defendants' failure to pay Plaintiffs and Class Members the unpaid balance of

1 | premium overtime compensation violates the provisions of Labor Code §510 and §1194, and the
2 | applicable IWC wage orders and is therefore unlawful.

3 |     53.     Accordingly, Defendants owe Plaintiffs and Class Members overtime wages, and
4 | have failed and refused, and continue to fail and refuse, to pay Plaintiffs and Class Members the
5 | overtime wages owed.

6 | **SECOND CAUSE OF ACTION**

7 | **FAILURE TO PROVIDE MEAL PERIODS OR COMPENSATION IN LIEU**
8 | **THEREOF**

9 | **(Against All Defendants)**

10 |     54.     Plaintiff incorporates and re-alleges each and every allegation contained above as
11 | though fully set forth herein.

12 |     55.     Pursuant to Labor Code §512, no employer shall employ an employee for a work
13 | period of more than five (5) hours without providing a meal break of not less than thirty (30)
14 | minutes in which the employee is relieved of all of his or her duties. An employer may not
15 | employ an employee for a work period of more than ten (10) hours per day without providing the
16 | employee with a second meal period of not less than thirty (30) minutes, except that if the total
17 | hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual
18 | consent of the employer and the employee only if the first meal period was not waived.

19 |     56.     Pursuant to the IWC wage orders applicable to Plaintiff and Class Members'
20 | employment by Defendants, in order for an "on duty" meal period to be permissible, the nature of
21 | the work of the employee must prevent an employee from being relieved of all duties relating to
22 | his or her work for the employer and the employees must consent in writing to the "on duty" meal
23 | period. On information and belief, Plaintiff and Class Members did not consent in writing to an
24 | "on duty" meal period. Further, the nature of the work of Plaintiff and Class Members was not
25 | such that they were prevented from being relieved of all duties. Despite the requirements of the
26 | IWC wage orders applicable to Plaintiff's and Class Members' employment by Defendants and
27 | Labor Code §512 and §226.7, Defendants did not provide Plaintiff and Class Members with all
28 | their statutorily authorized meal periods.

1    57.    For the four (4) years preceding the filing of this lawsuit, Defendants failed to

2  provide Plaintiff and Class Members, timely and uninterrupted meal periods of not less than thirty

3  (30) minutes pursuant to the IWC wage orders applicable to Plaintiff and Class Members'

4  employment by Defendants.  As a proximate result of the aforementioned violations, Plaintiff and

5  the other Class Members have been damaged in an amount according to proof at time of trial.

6    58.    By their failure to provide a compliant meal period for each shift worked over five

7  (5) hours and their failure to provide a compliant second meal period for any shift worked over ten

8  (10) hours per day by Plaintiff and the Class Members, and by failing to provide compensation in

9  lieu of such non-provided meal periods, as alleged above, Defendants violated the provisions of

10  Labor Code sections 226.7 and 512 and applicable IWC Wage Orders.

11    59.    Plaintiff and the Class Members regularly required to work shifts without being

12  provided all of their legally required meal periods.  Defendants created a working environment in

13  which Plaintiff and Class Members were not provided all of their meal periods due to shift

14  scheduling and/or work related demands placed upon them by Defendants. On information and

15  belief, Defendants' implemented a policy and practice which resulted in systematic and class-wide

16  violations of the Labor Code.  On information and belief, Defendants' violations have been

17  widespread throughout the liability period and will be evidenced by Defendants' time records for

18  the Class Members.

19    60.    As a result of the unlawful acts of Defendants described herein, Plaintiff and the

20  Class Members they seek to represent have been deprived of premium wages in amounts to be

21  determined at trial.  Pursuant to Labor Code §226.7, Plaintiff and Class Members are entitled to

22  recover one (1) hour of premium pay for each day in which a meal period was not provided, along

23  with interest and penalties thereon, attorneys' fees, and costs.

24                          **THIRD CAUSE OF ACTION**

25          **FAILURE TO PROVIDE REST PERIODS OR COMPENSATION IN LIEU**

26                                  **THEREOF**

27                            **(Against All Defendants)**

28    61.    Plaintiff incorporates and re-alleges each and every allegation contained above as

1 | though fully set forth herein.

2 | 62. Pursuant to the IWC wage orders applicable to Plaintiff and Class Members'
3 | employment by Defendants, "Every employer shall authorize and permit all employees to take rest
4 | periods, which insofar as practicable shall be in the middle of each work period.... [The]
5 | authorized rest period time shall be based on the total hours worked daily at the rate of ten (10)
6 | minutes net rest time per four (4) hours worked or major fraction thereof.... Authorized rest period
7 | time shall be counted as hours worked, for which there shall be no deduction from wages." Labor
8 | Code §226.7(a) prohibits an employer from requiring any employee to work during any rest period
9 | mandated by an applicable order of the IWC.

10 | 63. Defendants were required to authorize and permit employees such as Plaintiff and
11 | Class Members to take rest periods, based upon the total hours worked at a rate of ten (10) minutes
12 | net rest per four (4) hours worked, or major fraction thereof, with no deduction from wages.
13 | Despite said requirements of the IWC wage orders applicable to Plaintiff's and Class Members'
14 | employment by Defendants, Defendants failed and refused to authorize and permit Plaintiff and
15 | Class Members, to take ten (10) minute rest periods for every four (4) hours worked, or major
16 | fraction thereof.

17 | 64. On information and belief Defendants created a working environment in which
18 | Plaintiff and Class Members were not provided all of their rest periods due to shift scheduling
19 | and/or work related demands placed upon them by Defendants. On information and belief,
20 | Defendants implemented a policy and practice which resulted in systematic and class-wide
21 | violations of the Labor Code. On information and belief, Defendants' violations have been
22 | widespread throughout the liability period.

23 | 65. As a proximate result of the aforementioned violations, Plaintiff and Class
24 | Members have been damaged in an amount according to proof at time of trial. Pursuant to Labor
25 | Code §226.7, Plaintiff and Class Members are entitled to recover one (1) hour of premium pay for
26 | each day in which Defendants failed to provide a rest period to Plaintiff and the Class, plus
27 | interest and penalties thereon, attorneys' fees, and costs.

28 | ///

## FOURTH CAUSE OF ACTION

## FAILURE TO PAY TIMELY PAY WAGES

### (Against All Defendants)

66.     Plaintiff incorporates and re-alleges each and every allegation contained above as though fully set forth herein.

67.     Labor Code §§201-202 requires an employer who discharges an employee to pay compensation due and owing to said employee immediately upon discharge and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages on their last day of work.

68.     Labor Code §203 provides that if an employer willfully fails to pay compensation promptly upon discharge, as required by Labor Code §§201-202, the employer is liable for waiting time penalties in the form of continued compensation for up to thirty (30) work days.

69.     During the relevant time period, Defendants willfully failed and refused, and continue to willfully fail and refuse, to pay Plaintiff and Class Members their wages, earned and unpaid, either at the time of discharge, or within seventy-two (72) hours of their voluntarily leaving Defendants' employ. These wages include regular and overtime wages.

70.     As a result, Defendants are liable to Plaintiff and members of the Non-Exempt Production Employee class for waiting time penalties pursuant to Labor Code §203, in an amount according to proof at the time of trial.

## FIFTH CAUSE OF ACTION

## FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS

### (Against All Defendants)

71.     Plaintiff incorporates and re-alleges each and every allegation contained above as though fully set forth herein.

72.     Section 226(a) of the California Labor Code requires Defendants to itemize in wage statements all deductions from payment of wages and to accurately report total hours worked by

1  Plaintiff and the Class including applicable hourly rates and reimbursement expenses among other
2  things.  Defendants have knowingly and intentionally failed to comply with Labor Code section
3  226 and 204 on wage statements that have been provided to Plaintiff and the Class.

4       73.    IWC Wage Orders require Defendants to maintain time records showing, among
5  others, when the employee begins and ends each work period, meal periods, split shift intervals
6  and total daily hours worked in an itemized wage statement, and must show all deductions and
7  reimbursements from payment of wages, and accurately report total hours worked by Plaintiff and
8  the Class.  On information and belief, Defendants have failed to record all or some of the items
9  delineated in Industrial Wage Orders and Labor Code §226.

10      74.    Defendants have failed to accurately record all time worked. At all times relevant,
11 Defendants failed to accurately pay overtime wages owed to Plaintiffs and Class Members by
12 failing to include the shift differentials into the regular rates of pay for overtime calculation
13 purposes.

14      75.    Defendants also failed to identify Plaintiff's and Class Members' shift differential
15 pay as no hourly rate or total hours are listed.

16      76.    Defendants have also failed to accurately record the meal and rest period premiums
17 owed and all wages owed per pay period.

18      77.    Plaintiff and the Class have been injured as they were unable to determine whether
19 they had been paid correctly for all hours worked per pay period among other things.

20      78.    Pursuant to Labor Code section 226, Plaintiff and the Class are entitled up to a
21 maximum of $4,000 each for record keeping violations.

22      79.    Pursuant to Labor Code section 266.3, any employer who violates subdivision (a)
23 of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250)
24 per employee per violation in an initial citation and one thousand dollars ($1,000) per employee
25 for each violation in a subsequent citation, for which the employer fails to provide the employee a
26 wage deduction statement or fails to keep the records required in subdivision (a) of Section 226.

27 ///

28 ///

## SIXTH CAUSE OF ACTION

### VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200, et.seq.

#### (Against All Defendants)

80.     Plaintiff incorporates and re-alleges each and every allegation contained above as though fully set forth herein.

81.     Defendants' conduct, as alleged in this complaint, has been, and continues to be, unfair, unlawful, and harmful to Plaintiff and Class Members, Defendants' competitors, and the general public.  Plaintiff seeks to enforce important rights affecting the public interest within the meaning of the California Code of Civil Procedure §1021.5.

82.     Defendants' policies, activities, and actions as alleged herein, are violations of California law and constitute unlawful business acts and practices in violation of California Business and Professions Code §§17200, et seq.

83.     A violation of California Business and Professions Code §§17200, et seq., may be predicated on the violation of any state or federal law.  Defendants' policy of failing to accurately overtime pay to Plaintiff and Class Members, or to provide accurate itemized wage statements and failing to provide Plaintiff and the Class with meal periods and rest breaks or the one (1) hour of premium pay when a meal or rest break period was not provided or provided outside of the required time frames, violates Labor Code § 226, $510, §512, and §226.7 and applicable IWC Wage Orders and California Code of Regulations.

84.     Plaintiff and Class Members have been personally aggrieved by Defendants' unlawful and unfair business acts and practices alleged herein by the loss of money and/or property.

85.     Pursuant to California Business and Professions Code §§17200, et seq., Plaintiff and Class Members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences four (4) years prior to the filing of this complaint; an award of attorneys' fees, interest; and an award of costs.

///

///

1
2
3

### SEVENTH CAUSE OF ACTION PURSUANT TO

### FAILURE TO PAY OVERTIME ("FLSA")

### (Against All Defendants)

4      86.    Plaintiff incorporates and re-alleges each and every allegation contained above as
5  though fully set forth herein.

6      87.    At all times relevant to this action, Defendants were engaged in interstate
7  commerce, or in the production of goods for commerce, as defined by the FLSA.

8      88.    At all times relevant to this action, Plaintiff were "employees" of Defendants within
9  the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

10      89.    Plaintiffs and the Class Members, by virtue of their job duties and activities
11  performed, are non-exempt employees.

12      90.    Defendants are not "retail or service establishments" as defined by 29 U.S.C. §
13  213(a)(2) of the FLSA.

14      91.    Plaintiffs and the Class Members have either (1) engaged in commerce; or (2)
15  engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged
16  in commerce or in the production of goods for commerce.

17      92.    At all times relevant to this action, Plaintiff and the Class Members were suffered to
18  work in excess of 40 hours per week without premium pay for the same violation of 29 U.S.C. §§
19  206 *et. seq.*

20      93.    As a result, Plaintiff and the Class Members must be paid the federally mandated
21  rate of 150% of each employee's regularly hour wages for work weeks of 40 hours or more. 29
22  U.S.C. § 207.

23      94.    Defendants' violations of the FLSA were knowing and willful. Defendants could
24  have easily accounted for and properly compensated Plaintiff and the Class Members but have
25  failed to do so.

26      95.    Plaintiff therefore seeks damages in an amount equal to the unpaid overtime wages
27  due and owing to the Class Members, along with liquidated damages in an equal amount, costs
28  and attorney's fees as provided for in 29 U.S.C. § 216.

1
**PRAYER FOR RELIEF**

2
WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

3
Class Certification

4
    1.    That this action be certified as a class action;

5
    2.    That Plaintiff be appointed as the representative of the Class;

6
    3.    That Plaintiff be appointed as the representative of the Subclass; and

7
    4.    That counsel for Plaintiff is appointed as counsel for the Class and Subclass.

8
On the First Cause of Action

9
    1.    For compensatory damages equal to the unpaid balance of overtime owed to

10
Plaintiff and Class members as well as interest and costs;

11
    2.    For reasonable attorneys' fees and costs pursuant to Labor Code § 510;

12
    3.    For liquidated damages in an amount equal to the wages unlawfully unpaid and

13
interest thereon pursuant to Labor Code §558;

14
    4.    For such other and further relief as the Court deems proper.

15
On the Second Cause of Action

16
    1.    For one (1) hour of premium pay for each day in which a required meal period was

17
not provided or not provided in a timely manner; and

18
    2.    For such other and further relief as the Court deems proper.

19
On the Third Cause of Action

20
    1.    For one (1) hour of premium pay for each day in which a required rest period was

21
not authorized or permitted; and

22
    2.    For such other and further relief as the Court deems proper.

23
On the Fourth Cause of Action

24
    1.    For statutory penalties pursuant to Labor Code §203;

25
    2.    For interest for wages untimely paid; and

26
    3.    For such other and further relief as the Court deems proper.

27
On the Fifth Cause of Action

28
    1.    For statutory penalties pursuant to Labor Code §226;

- 18 -
CLASS ACTION COMPLAINT

1    2.    For interest for wages untimely paid;

2    3.    For penalties pursuant to Labor Code §266.3; and

3    4.    For such other and further relief as the Court deems proper.

4                              On the Sixth Cause of Action

5    1.    That Defendants, jointly and/or severally, pay restitution of sums to Plaintiff and

6    Class Members for their past failure to provide accurate itemized wage statements, pay wages,

7    premium wages for meal and/or rest periods, that were not provided as described herein to

8    Plaintiff and Class Members over the last four (4) years in an amount according to proof;

9    2.    For pre-judgment interest on any unpaid wages due from the day that such amounts

10   were due;

11   3.    For reasonable attorneys' fees that Plaintiff and Class Members are entitled to

12   recover;

13   4.    For costs of suit incurred herein; and

14   5.    For such other and further relief as the Court deems proper.

15                            On the Seventh Cause of Action

16   1.    For general damages as measured by unpaid overtime wages; liquidated damages,

17   an equal amount to the unpaid overtime wages under federal law, including, *inter alia,* 29 U.S.C. §

18   216 et. seq.; and interest and attorneys fees pursuant to, *inter alia,* 29 U.S.C. § 216 et. seq.; and

19   2.    For such other and further relief as the Court deems proper.

20                              **DEMAND FOR JURY TRIAL**

21   Plaintiff and members of the Class and Subclass request a jury trial in this matter.

22

23   Dated: October 30, 2019                    JAMES HAWKINS APLE

24                                              By:

25                                                   JAMES R. HAWKINS, ESQ.
                                                     GREGORY MAURO, ESQ.
26                                                   MICHAEL CALVO, ESQ.
                                                     Attorneys for Plaintiff PAEA SANFT,
27                                                   individually and on behalf of all others
                                                     similarly situated.

28

1
JAMES HAWKINS APLC
2
James R. Hawkins, Esq. (#192925)
Gregory Mauro, Esq. (#222239)
3
Michael Calvo, Esq. (#314986)
9880 Research Drive, Suite 800
4
Irvine, CA 92618
Tel.: (949) 387-7200
5
Fax: (949) 387-6676
Email: James@jameshawkinsaplc.com
6
Email: Greg@jameshawkinsaplc.com
Email: Michael@jameshawkinsaplc.com
7

Attorneys for Plaintiff PAEA SANFT,
8
individually and on behalf of all others similarly situated

9

10          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
                       **FOR THE COUNTY OF SAN MATEO**
11

12 | PAEA SANFT, individually and on behalf of      CASE NO.: 19CIV06454
   | all others similarly situated,
13                                                  Assigned For All Purposes To:
                                                    Judge: Hon. Marie S. Weiner
14                    Plaintiff,                    Dept.: 2

15                                                  **NOTICE OF CASE MANAGEMENT**
            v.                                      **ORDER #1**
16

17 | SIMS GROUP USA CORPORATION dba
   | SIMS METAL MANAGEMENT, a California
18 | Corporation,  and DOES 1-50, inclusive,

19                    Defendants.

20

21

22

23

24

25

26

27

28

**FILED**
**SAN MATEO COUNTY**
NOV 1 2 2019
Clerk of the Superior Court
By
DEPUTY CLERK

D2



---
NOTICE OF CASE MANAGEMENT ORDER #1

1      TO THE COURT AND ALL PARTIES OF RECORD AND THEIR ATTORNEYS:

2   Please take notice that the Initial Status conference set for January 27, 2020 is VACATED. The

3   initial Case Management Conference is set for Tuesday, December 17, 2019 at 3:00p.m. in

4   department 2 of this Court, located at Courtroom 2E, 400 County Center, Redwood City,

5   California. The Case Management Order #1 is attached hereto as Exhibit A.

6

7

8   Dated: November 8, 2019                    JAMES HAWKINS APLC

9                                        By: _____
                                              JAMES R. HAWKINS, ESQ.
10                                            GREGORY MAURO, ESQ.
                                              MICHAEL CALVO, ESQ.
11                                            Attorneys for Plaintiff PAEA SANFT,
                                              individually and on behalf of all others
12                                            similarly situated.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 1 -
CLASS ACTION COMPLAINT

# EXHIBIT A

**ENDORSED FILED**
SAN MATEO COUNTY

NOV 0 6 2019

Clerk of the Superior Court
By TERRI MARAGOULAS
DEPUTY CLERK

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

COMPLEX CIVIL LITIGATION

| | |
|---|---|
| PAEA SANFT, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>SIMS GROUP USA CORPORATION dba SIMS METAL MANAGEMENT, a California Corporation, and DOES 1-50, inclusive,<br><br>    Defendants. | Case No. 19CIV06454<br>CLASS ACTION<br><br>Assigned for All Purposes to Hon. Marie S. Weiner, Dept. 2<br><br>**CASE MANAGEMENT ORDER #1** |

Pursuant to the Notice of Assignment for All Purposes, Designation as Complex Case, Setting of Case Management Conference, and Complex Fees due filed October 31, 2019, designating this putative class action case as a complex action, and single assigning to the Honorable Marie S. Weiner in Department 2 of this Court,

IT IS HEREBY ORDERED as follows:

1.      All pleadings, motions, applications, briefs, and any and all other papers in this case shall be filed with (and related filing fees paid to) the Civil Clerk's Office

1

located in the Hall of Justice, First Floor, Room A, 400 County Center, Redwood City, California. One extra copy of any such filing shall be (1) electronically served upon Department 2 at email address complexcivil@sanmateocourt.org or (2) stamped "Judge's Copy" and *delivered by overnight or first class mail directly to Department 2* located at Courtroom 2E, 400 County Center, Redwood City, California 94063. DO NOT LEAVE THE JUDGE'S COPY WITH THE CLERK'S OFFICE. PLEASE ADD DEPARTMENT 2 TO YOUR **E-SERVICE** OR MAILING SERVICE LIST IN THE CASE AS TO ANY AND ALL PAPERS FILED WITH THE COURT. All motions and briefs shall conform with the California Rules of Court, especially Rule 3.1113, and indicate on the caption page that this matter is assigned for all purposes to Department 2. DO NOT FAX COPIES OR CORRESPONDENCE TO DEPARTMENT 2, AS THERE IS NO DEDICATED FAX LINE FOR THE CIVIL COMPLEX DEPARTMENT.

2.    As to any and all motions or other matters requiring a hearing, the hearing date shall be obtained *directly* from and approved by Department 2 at (650) 261-5102 (and *not* with the Civil Clerk's Office nor with the Research Attorney), *prior* to filing of the moving papers or other initial filings.

3.    Pursuant to Section 1010.6(b) of the Code of Civil Procedure, Rule 2.253(a) of the California Rules of Court, and San Mateo County Superior Court Local Rule 2.1.5, all documents in Complex Civil actions (other than the original documents specified below) may be filed electronically. The document (other than exhibits) must be text searchable. Please visit www.sanmateocourt.org for further information on e-filing. **Please note that exhibits to any electronically filed briefs, declarations or other documents must be electronically "bookmarked" as required by CRC Rule 3.1110(f)(4)**

4.    Until further order of the Court, the following original documents must still be filed/lodged in hardcopy paper:

Ex Parte Motions and Oppositions thereto

Stipulation and Proposed Order

Proposed Judgments

Abstract of Judgment

Appeal Documents, including Notice of Appeal

Administrative Records

5.    Proposed Orders should be e-filed with the motion or stipulation to which it relates in conformity with CRC Rule 3.1312(c). You must also email an editable version of the Proposed Order in Word format (not PDF) to complexcivil@sanmateocourt.org so that the judge can modify it prior to signing, if needed.

6.    Correspondence to Department 2, such as discovery letter briefs, requests to take matters off calendar, and requests for rescheduling, regarding actions assigned to the Complex Civil Department may be submitted electronically, rather than paper, by e-mail addressed to complexcivil@sanmateocourt.org **All e-correspondence must be sent in at least 12 point type.** This email address is for the Complex Civil Litigation Department to *receive* correspondence, and is not a venue for back-and-forth communications with the judge. Communications to this email address are *not* part of the official court files — just like a paper letter, they are not "filed" documents — and will be retained for at least 30 days and then be subject to deletion (destruction) thereafter.

3

7.      All communications to the complexcivil@sanmateocourt.org email address MUST include in the header "subject line" the Case Number and Name of Case (e.g., CIV 654321 *Smith v. Jones*).

8.      *Ex parte* applications in this matter shall heard by Department 2, on **Tuesdays and Thursday between 2:00 p.m. and 3:30 p.m.**, and the parties are required to meet the requirements of CRC Rule 3.120 *et seq.*.  With the consent of counsel for *all* parties, telephone conferences on *simple* interim case management matters may be scheduled with the Court for a mutually convenient time and date – with the scheduling and logistics of such telephone conferences to be the responsibility of the requesting party/parties.

9.      As to any discovery motions, the parties are relieved of the statutory obligation under CRC Rule 3.1345, and thus need *not* file a separate statement – instead the subject discovery requests (or deposition questions) and written responses (or deposition answers or objections) must be attached to the supporting declaration on the discovery motion.

10.     Given the nature of this case, the Court views document production and depositions as the most effective means of discovery for adjudication.  Accordingly, no party may propound more than 35 special interrogatories *total* and no party may propound more than 35 requests for admissions (other than as to the authenticity of documents) *total*, without prior court order after demonstration of need and a showing that other means of discovery would be less efficient.

11.     In regard to all discovery disputes, counsel for the parties (and any involved third parties) shall meet and confer on any and all discovery disputes and, if there are remaining disputes, then counsel for each side shall serve on each other and

4

mail/deliver *directly* to Department 2 a short letter brief setting forth the dispute and attaching as *tabbed* exhibits to the letter the subject discovery requests and discovery responses (if any). **The discovery letter brief may instead be electronically delivered to Department 2 via email address complexcivil@sanmateocourt.org.** At the time or prior to submitting the letter briefs, counsel for the parties shall also schedule a discovery conference with the Court to occur no sooner than five court days after *delivery* of the last letter brief to the Court, in order to discuss the dispute. THE DISCOVERY DISPUTE LETTER BRIEFS AND THE DISCOVERY CONFERENCE SHALL BE DONE *WELL PRIOR TO* THE STATUTORY DEADLINES FOR FILING OF ANY MOTION TO COMPEL OR OTHER DISCOVERY MOTION. No discovery motion may be filed by any party unless and until there is compliance with the requirement of this Order, i.e., (i) substantive meet and confer; (ii) exchange of letter briefs; and (iii) discovery conference with the Court. This requirement does *not* constitute an extension of time for any statutory time period for filing and serving any motion under the Civil Discovery Act.

12. Pursuant to CRC Rule 3.1113(i), the Complex Civil Department, Dept. 2, **does not require any appendix of non-California authorities, unless specifically stated by the Court as to a particular motion.**

13. The initial Case Management Conference set for January 27, 2020 is VACATED. The initial Case Management Conference is set for **Tuesday, December 17, 2019 at 3:00 p.m.** in Department 2 of this Court, located at Courtroom 2E, 400 County Center, Redwood City, California. Counsel for all parties shall meet and confer on all matters set forth in California Rules of Court Rule 3.750 and Rule 3.724(8).

14. In anticipation of the Case Management Conference, counsel for the parties should be prepared to discuss at the hearing *and* file written case management

conference statements (in prose and details, *not* using the standardized Judicial Council form) with a courtesy copy delivered *directly* to Department 2 on or before December 10, 2019, as to the following:

a. Status of Pleadings and Service of Process;

b. Status of Discovery, including the initial production of documents by all parties;

c. Status of Settlement or Mediation;

d. Conclusions reached after meet and confer on all matters set forth in CRC Rule 3.750 and Rule 3.724(8);

e. Any anticipated motions and proposed briefing schedule;

f. Setting of next CMC date; and

g. Any other matters for which the parties seek Court ruling or scheduling.

15. Discovery is not stayed.

16. **PLAINTIFF SHALL PROMPTLY SERVE THIS CMC ORDER #1 UPON ALL DEFENDANTS OR UPON KNOWN COUNSEL FOR DEFENDANTS,** and promptly file proof of service.

DATED: November 5, 2019

HON. MARIE S. WEINER
JUDGE OF THE SUPERIOR COURT

6

**SERVICE LIST**
*Sanft v. Sims Group*, Class Action 19CIV06454
As of November 2019

Attorneys for Plaintiff and the putative class:

JAMES HAWKINS
GREGORY MAURO
MICHAEL CALVO
JAMES HAWKINS APLC
9880 Research Drive, Suite 800
Irvine, CA  92618
(949) 387-7200

**ENDORSED FILED**
**SAN MATEO COUNTY**

## AFFIDAVIT OF MAILING

NOV 0 6 2019

**CASE NUMBER: 19CIV6454**

Clerk of the Superior Court
By TERRI MARAGOULAS
DEPUTY CLERK

**PAEA SANFT vs. SIMS GROUP USA CORPORATION dba SIMS METAL MANAGEMENT**

**DOCUMENTS: CASE MANAGEMENT ORDER #1**

I declare, under penalty of perjury, that on the following date I deposited in the United State Post Office Mail Box at Redwood City, California a true copy of the foregoing document, enclosed in an envelope, with the proper and necessary postage prepaid thereon, and addressed to the following:

JAMES HAWKINS
GREGORY MAURO
MICHAEL CALVO
JAMES HAWKINS APLC
9880 Research Drive, Suite 800
Irvine, CA 92618

Executed on: November 6, 2019
at Redwood City, California

NEIL TANIGUCHI
CLERK OF THE SUPERIOR COURT

By:_____ TERRI MARAGOULAS _____
Terri Maragoulas
Deputy Clerk

1

## PROOF OF SERVICE, COUNTY OF ORANGE

2

3  I am a resident of the State of California, County of Orange.  I am over the age of
   eighteen years and not a party to the within action.  My business address is 9880
4  Research Drive., Suite 200, Irvine, California 92618.

5
   On November 12, 2019, I served on the interested parties in this action the following
6  document(s) entitled:

7
      • **NOTICE OF CASE MANAGEMENT ORDER #1**
8

9  [XX]  BY MAIL: I enclosed the document(s) in a sealed envelope or package addressed to the
10 persons at the addresses listed in the Service List below and placed the envelope for collection
   and mailing, following our ordinary business practices. I am readily familiar with the firm's
11 practice for collecting and processing correspondence for mailing. On the same day that the
   correspondence is placed for collection and mailing, it is deposited in the ordinary course of
12 business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

13

14                                **SERVICE LIST**

| **SIMS GROUP USA CORPORATION dba** | Hon. Marie S. Weiner |
|---|---|
| **SIMS METAL MANAGEMENT** | San Mateo Superior Court Hall of Justice |
| Agent for Service of Process: CSC- Lawyers | Courtroom 2E, 400 County Center |
| Incorporating Service | Redwood City, CA 94063 |
| 2710 Gateway Oaks Drive, Suite 150 N | complexcivil@sanmateocourt.org |
| Sacramento, CA 95833 | (via email only) |

19

20 [ XX] **STATE:** I declare under penalty of perjury, under the laws of the State of
   California, that the above is true and correct.

21

22 Executed on November 12, 2019, at Irvine, California

23

24                                          Nicole Miccolis

25

26

27

28

---

**FILED**
SAN MATEO COUNTY

NOV 19 2019

Clerk of the Superior Court
By _____
DEPUTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| PAEA SANFT, individually and on behalf of all others similarly situated, | Case No. 19CIV06454 |
| Plaintiffs, | |
| vs. | **ORDER** |
| SIMS GROUP USA CORPORATION dba SIMS METAL MANAGEMENT, a California Corporation, et al. | **CCP section 170.6** |
| Defendants. | |

The Court GRANTS Plaintiff's Code of Civil Procedure section 170.6 challenge to Judge Marie S. Weiner.  The case is reassigned for all purposes to Department 4, Judge Nancy L. Fineman.  The December 17, 2019 Case Management Conference is VACATED.  The parties are directed to contact Judge Fineman's Department at 650-261-5104 to schedule a Case Management Conference.

Dated:  November 19, 2019.

JONATHAN E. KARESH
Presiding Judge

19-CIV-06454
ORD
Order
2133727

1

1

2     19 – CIV – 06464
      ORD
3     Order
      2198050
4

5

**FILED**
**SAN MATEO COUNTY**

NOV 2 1 2019

Clerk of the Superior Court

By _____
DEPUTY CLERK

6              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                   IN AND FOR THE COUNTY OF SAN MATEO

8

9   | **PAEA SANFT, individually and on behalf of all others similarly situated,** | Case No. 19Civ06454 |
    |---|---|
10  | | **CLASS ACTION** |
11  | **Plaintiffs,** | Assigned for all purposes to the Hon. Nancy L. Fineman |
    | **vs.** | |
12  | | |
13  | **SIMS GROUP USA CORPORATION dba SIMS METAL MANAGEMENT, a California Corporation,** *et al.* | **NOTICE OF CASE MANAGEMENT CONFERENCE AND CASE MANAGEMENT ORDER NO. 1 ISSUED BY JUDGE FINEMAN** |
14  | | |
    | **Defendants.** | |
15  | | Date:   January 10, 2020 |
    | | Time:   9:30 a.m. |
16  | | Dept.:   4 |
    | | Hon. Nancy L. Fineman |
17

18       Pursuant to the Order entered by the Presiding Judge Jonathan E. Karesh on November 19, 2019,

19   2019, this case was single assigned to Department 4 of this Court before the Honorable Nancy L. Fineman.

20       IT IS HEREBY ORDERED as follows:

21       1.      PLAINTIFF(S) SHALL SERVE A COPY OF THIS ORDER UPON ALL PARTIES, OR

22   THEIR DESIGNATED COUNSEL, WHO HAVE NOT YET APPEARED IN THIS ACTION, including

23   any and all parties added to this action and/or cross-action(s) after the issuance of this order, and file proof

24   of service.

25       2.      All pleadings, motions, applications, briefs, and any and all other papers in this case shall

26   be filed with (and related filing fees paid to) the Civil Clerk's Office located at Hall of Justice, 400 County

27   Center, First Floor, Room A, Redwood City, California.

28

**Case No. 19Civ06454**
Case Management Order No. 1

1     3.     All motions and briefs shall conform with the California Rules of Court, especially rule

2  3.1113, and indicate on the caption page that this matter is "Assigned for All Purposes to Dept. 4." DO

3  NOT FAX COPIES OR CORRESPONDENCE TO DEPARTMENT 4, AS THERE IS NO DEDICATED

4  FAX LINE.

5     4.     One set of courtesy copies of any such filing shall be stamped "Judge's Copy" and delivered

6  within one court day of filing or execution **directly** to Department 4 located at 400 County Center,

7  Courtroom 8B, Redwood City, California 94063. DO NOT LEAVE THE JUDGE'S COPY WITH THE

8  CLERK'S OFFICE. All exhibits must be separated by exhibit tabs. (See, e.g., Cal. Rules of Court, rule

9  3.1110(f).) **One copy of any such filing shall also be electronically served upon Department 4 at**

10  **complexcivil@sanmateocourt.org on the date of filing.** Courtesy copies of any electronic exhibits shall

11  be submitted on CD or DVD in conformity with the requirements of California Rules of Court, rules

12  2.256(b) and 3.1110(f)(4).

13     5.     As to any and all motions or other matters requiring a hearing, the hearing date shall be

14  obtained **directly** from and approved by Department 4 at **(650) 261-5104** (and not with the Civil Clerk's

15  Office or the Research Attorney), **prior** to filing the moving papers or other initial filings.

16     6.     Pursuant to Section 1010.6(b) of the Code of Civil Procedure, Rule 2.253(a) of the

17  California Rules of Court, and San Mateo County Superior Court Local Rule 2.1.5, all documents in

18  Complex Civil actions (other than the original documents specified below) may be electronically filed. The

19  document (other than exhibits) must be text searchable.  Please visit www.sanmateocourt.org for further

20  information on e-filing.  **Please note that exhibits to any electronically filed briefs, declarations or**

21  **other documents must be electronically "bookmarked" as required by California Rule of Court Rule**

22  **3.1110(f)(4).**

23     7.     Until further order of the Court, the following original documents must still be filed/lodged

24  in hardcopy paper:

25        a.  Ex Parte Motions and Oppositions thereto

26        b.  Stipulation and Proposed Order

27        c.  Proposed Judgments

28        d.  Abstract of Judgment

1        e.  Appeal Documents, including Notice of Appeal

2        f.  Administrative records

3    8.    Proposed Orders should be e-filed with the motion or stipulation to which it relates in

4  conformity with California Rule of Court Rule 3.1312(c). You must also email an editable version of the

5  Proposed Order in Word format (not PDF) to complexcivil@sanmateocourt.org so that the judge can

6  modify it prior to signing, if needed.

7    9.    Correspondence to Department 4, such as discovery letter briefs, requests to take matters

8  off calendar, and requests for rescheduling in this action may be submitted electronically, rather than paper,

9  by e-mail addressed to complexcivil@sanmateocourt.org  **All e-mails must be sent in at least 12 point**

10 **type and cc:ed on all parties or there counsel of record**.  This email address is for the Complex Civil

11 Litigation Department to *receive* correspondence, and is not a venue for back-and-forth communications

12 with the judge.  Communications to this email address are *not* part of the official court files – just like a

13 paper letter, they are not "filed" documents – and will be retained for at least 30 days and then be subject

14 to deletion (destruction) thereafter.

15   10.    All communications to the complexcivil@sanmateocourt.org email address shall include in

16 the header "subject line" the **Department Number, Case Name, Case Number, and a brief description**

17 **of the email** (e.g., "Dept. 4 - *Smith v. Jones* (CIV654321) - Smith's Case Management Statement").

18   11.    **Plaintiff shall provide a copy in Word of the current proof of service to the Clerk of**

19 **Department 4 and anytime there is a change in the proof of service shall provide an amended Proof**

20 **of Service to the clerk.  The proof of service shall be formatted so that labels may be printed onto**

21 **Avery   5164   and   5260   labels.      The   Word   proof   of   service   shall   be   emailed   to**

22 **complexcivil@sanmateocourt.org following the procedure set forth in paragraph 10.**

23   12.    *Ex parte* applications in this action shall be heard by Department 4 only. Department 4 does

24 not have a set day and time to hear ex parte applications. A hearing date for any ex parte application shall

25 be obtained directly from Department 4 in accordance with Paragraph 5, *supra*. This requirement neither

26 modifies nor abrogates any notice or service requirements. (Cal. Rules of Court, rules 3.1203, 3.1206.)

27   13.    As to any discovery motion, the parties are relieved of the statutory obligation under

28 California Rules of Court, rule 3.1345, and thus need not file a separate statement – instead the subject

1  discovery requests (or deposition questions) and written responses (or deposition answers or objections)
2  must be attached to the supporting declaration on the discovery motion.

3      14.    Given the nature of this case, the Court views document production and depositions as the
4  most effective means of discovery for adjudication.  Accordingly, no party may propound more than 35
5  special interrogatories total and no party may propound more than 35 requests for admissions (other than
6  as to the authenticity of documents) total, without prior court order after demonstration of need and a
7  showing that other means of discovery would be less efficient.

8      15.    In regard to all discovery disputes, counsel for the parties (and any involved third parties)
9  shall meet and confer on any and all discovery disputes and, if there are remaining disputes, then counsel
10  for each side shall serve on each other and mail/deliver directly to Department 4 a short letter brief setting
11  forth the dispute and attaching as tabbed exhibits to the letter the subject discovery requests and discovery
12  responses (if any).  At the time or prior to submitting the letter briefs, counsel for the parties shall also
13  schedule a discovery conference with the Court to occur no sooner than five court days after delivery of
14  the last letter brief to the Court, in order to discuss the dispute. THE DISCOVERY DISPUTE LETTER
15  BRIEFS AND THE DISCOVERY CONFERENCE SHALL BE DONE WELL PRIOR TO THE
16  STATUTORY DEADLINES FOR FILING OF ANY MOTION TO COMPEL OR OTHER DISCOVERY
17  MOTION.  No discovery motion may be filed by any party unless and until there is compliance with the
18  requirement of this Order, *i.e.*, (i) substantive meet and confer, (ii) exchange of letter briefs, and (iii)
19  discovery conference with the Court.  This requirement does not constitute an extension of time for any
20  statutory time period for filing and serving any motion under the Civil Discovery Act.

21      16.    Pursuant to California Rules of Court, rule 3.1113(i), Department 4, does not require any
22  appendix of non-California authorities, unless specifically stated by the Court as to a particular motion.

23      17.    **The initial Status Conference is set for <u>January 10, 2020 at 9:30 a.m.</u> in Department 4.**
24  Counsel for all parties shall meet and confer on all matters set forth in California Rules of Court, rules
25  3.750 and 3.724(8).

26  ///
27  ///
28  ///

1     18.    In anticipation of the Status Conference, counsel for the parties should be prepared to

2  discuss at the hearing and file written case management conference statements (*in prose and details, not*

3  *using the standardized Judicial Council form*) with a courtesy copy delivered directly to Department 4

4  on or before **January 3, 2020** as to the following:

5          a.    Status of Pleadings and Service of Process;

6          c.    Status of Discovery, including the initial production of documents by all parties, and

7               depositions and protective orders;

8          d.    Status of Settlement or Mediation;

9          e.    Conclusions reached after meet and confer on all matters set forth in California Rule

10         of Court Rules 3.750 and Rule 3.724(8).

11          f.    Any anticipated motions and proposed briefing schedules, including a schedule for

12      challenges to the complaint and class certification;

13          g.    Setting of next CMC date; and

14          h.    Any other matters for which the parties seek Court ruling or scheduling.

15

16  Dated: November 21, 2019        By: _____

17                             NANCY L. FINEMAN
                                JUDGE OF THE SUPERIOR COURT

# Exhibit B

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON      12/13/2019
By      /s/ Jennifer Tannous
Deputy Clerk

1   Bonnie Glatzer, State Bar No. 147804
    bglatzer@nixonpeabody.com
2   Jade Butman, State Bar No. 235920
    jbutman@nixonpeabody.com
3   NIXON PEABODY LLP
    One Embarcadero Center, 32nd Floor
4   San Francisco, CA  94111
    Tel:  415-984-8200
5   Fax:  415-984-8300

6   Attorneys for Defendant
    SIMS GROUP USA CORPORATION
7

8

9                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                              COUNTY OF SAN MATEO

11

12   PAEA SANFT, individually and on behalf of        Case No. 19CIV06454
     all others similarly situated,
13                                                     **ANSWER OF DEFENDANT SIMS
                          Plaintiff,                   GROUP USA CORPORATION TO
14                                                     PLAINTIFF'S CLASS ACTION
              vs.                                      COMPLAINT PURSUANT TO
15                                                     CALIFORNIA CODE OF CIVIL
     SIMS GROUP USA CORPORATION dba                    PROCEDURE SECTION 382**
16   SIMS METAL MANAGEMENT, A California
     Corporation, and DOES 1-50, inclusive,
17
                          Defendant.
18

19

20         Defendant SIMS GROUP USA CORPORATION (hereinafter "Defendant"), for itself

21   alone, hereby answers the unverified Class Action Complaint Pursuant to California Code of

22   Civil Procedure section 382 ("Complaint") of Plaintiff PAEA SANFT ("Plaintiff").  The term

23   "Plaintiff," as used herein, refers to Plaintiff Paea Sanft, and includes all others purportedly

24   similarly situated on whose behalf the Complaint was filed.

25                                    **GENERAL DENIAL**

26         1.      Pursuant to the provisions of Section 431.30(d) of the California Code of Civil

27   Procedure, Defendant generally denies each and every material allegation of the Complaint,

28   including that the claims asserted may be adjudicated on a class-wide basis on behalf of others

4849-0391-2110.1

_____
          ANSWER OF DEF. SIMS GROUP USA CORPORATION [CASE NO. 19CIV06454]

1   purportedly similarly situated.  Defendant further generally denies that Plaintiff or anyone else on

2   whose behalf the Complaint is brought is entitled to damages, statutory penalties, restitution,

3   interest, attorneys' fees and costs, or any other form of legal or equitable relief.

4   **AFFIRMATIVE DEFENSES**

5      2.     Defendant alleges the affirmative defenses set forth below as to each and every

6   cause of action and claim for relief asserted in the Complaint, unless specified otherwise, and

7   with respect to each and every other current or former employee of Defendant whom Plaintiff

8   purports to represent in this matter, as well as against each and every member of any certified

9   class or subclass, in the event that the Court certifies any class or subclass.  By pleading these

10   affirmative defenses, Defendant does not assume the burden of proving any fact, issue, or element

11   of a cause of action or claim for relief where such burden properly belongs to Plaintiff.

12   **FIRST AFFIRMATIVE DEFENSE**

13   **(Unjust Enrichment)**

14      3.     As an affirmative defense to all Causes of Action in the Complaint, Defendant

15   alleges, upon information and belief, that Plaintiff's claims for monetary relief are barred, in

16   whole or in part, to the extent that any award in this action would constitute unjust enrichment.

17   **SECOND AFFIRMATIVE DEFENSE**

18   **(Avoidable Consequences)**

19      4.     As an affirmative defense to all Causes of Action in the Complaint, Defendant

20   alleges, upon information and belief, that the claims for declaratory, injunctive and restitution

21   relief set forth therein are barred, in whole or in part, by the doctrine of avoidable consequences

22   because Defendant adopted adequate policies and practices for complying with wage and hour

23   requirements, together with reasonable avenues for Plaintiff to take to report and address any

24   problem so that it could be corrected, and Plaintiff unreasonably failed to avail himself of those

25   avenues.

26   **THIRD AFFIRMATIVE DEFENSE**

27   **(Laches)**

28      5.     As an affirmative defense to all Causes of Action in the Complaint, Defendant

1  alleges, upon information and belief, that the claims for declaratory, injunctive and restitution

2  relief set forth therein are barred, in whole or in part, due to Plaintiff's unreasonable delay in

3  notifying Defendant of any of the alleged actionable wrongs during the period that he worked for

4  Defendant, and his unreasonable delay in bringing this lawsuit, which delays have resulted in

5  prejudice to Defendant.

6                          **FOURTH AFFIRMATIVE DEFENSE**

7                                **(Waiver/Estoppel)**

8       6.    As an affirmative defense to all Causes of Action in the Complaint, Defendant

9  alleges, upon information and belief, that the Complaint and all causes of action and claims for

10 relief are barred, in whole or in part, by the equitable doctrines of waiver and estoppel because,

11 without admitting that any violations occurred, the acts alleged in the Complaint to be unlawful

12 occurred, if at all, as a result of conduct or omissions by, or with the consent and voluntary

13 participation of, Plaintiff and the purported class members.

14                          **FIFTH AFFIRMATIVE DEFENSE**

15                               **(Good Faith Dispute)**

16      7.    As an affirmative defense to all Causes of Action in the Complaint, Defendant

17 alleges, upon information and belief, that the Complaint and each cause of action set forth therein

18 cannot be maintained because, without admitting that any violation occurred, Defendant alleges

19 that any violation of the California Labor Code or of a California Industrial Welfare Commission

20 Wage Order was an act or omission made in good faith, and that in any participation in such acts,

21 Defendant had reasonable grounds for believing that the act or omission was not a violation of the

22 California Labor Code or any California Industrial Welfare Commission Wage Order.

23                          **SIXTH AFFIRMATIVE DEFENSE**

24                             **(Speculative Damages)**

25      8.    As an affirmative defense to all Causes of Action in the Complaint, Defendant

26 alleges, upon information and belief, that Plaintiff's claims for damages, restitution and/or other

27 relief are barred, in whole or in part, because they are speculative and uncertain.

28

4849-0391-2110.1                          - 3 -

1 **SEVENTH AFFIRMATIVE DEFENSE**

2 **(No Injury)**

3     9.    As an affirmative defense to all Causes of Action in the Complaint, Defendant

4 alleges, upon information and belief, that Plaintiff sustained no injury or damages as a proximate

5 result of any act by or attributable to Defendant.

6 **EIGHTH AFFIRMATIVE DEFENSE**

7 **(Plaintiff was the Proximate Cause)**

8     10.    As an affirmative defense to all Causes of Action in the Complaint, Defendant

9 alleges, upon information and belief, that Plaintiff's own actions were the sole proximate cause of

10 the damages alleged in the Complaint.

11 **NINTH AFFIRMATIVE DEFENSE**

12 **(De Minimis Violations)**

13     11.    As an affirmative defense to all Causes of Action in the Complaint, Defendant

14 alleges, upon information and belief, that although it denies any liability on the claims alleged in

15 the Complaint, if it should be determined that Defendant violated one or more provisions of the

16 California Labor Code and/or Industrial Welfare Commission Wage Order, then neither Plaintiff

17 nor any other employee on whose behalf the Complaint is brought is entitled to any damages,

18 penalties or other relief because such violation(s) were *de minimis*.

19 **TENTH AFFIRMATIVE DEFENSE**

20 **(Failure to Exhaust Administrative Remedies)**

21     12.    As an affirmative defense to all Causes of Action in the Complaint, Defendant

22 alleges, upon information and belief, that the Court has no jurisdiction over the subject matter of

23 Plaintiff's Complaint, or parts thereof, because Plaintiff has failed to properly exhaust his

24 administrative remedies.

25 **ELEVENTH AFFIRMATIVE DEFENSE**

26 **(Collective Bargaining Agreement)**

27     13.    As an affirmative defense to all Causes of Action in the Complaint, Defendant

28 alleges, upon information and belief, that the Court lacks jurisdiction over those causes of action

4849-0391-2110.1     - 4 -

1  because Plaintiff's grievances are subject to resolution under the Collective Bargaining

2  Agreement ("CBA") currently in place, which governs said causes of action and claims for relief

3  and requires interpretation of the CBA.

4  **TWELFTH AFFIRMATIVE DEFENSE**

5  **(Failure to Exhaust Remedies Under Collective Bargaining Agreement)**

6  14.   As an affirmative defense to all Causes of Action in the Complaint, Defendant

7  alleges, upon information and belief, that Plaintiff's claims are barred due to Plaintiff's failure to

8  fully exhaust his available remedies under the grievance-arbitration procedures of the CBA

9  governing his employment.

10  **THIRTEENTH AFFIRMATIVE DEFENSE**

11  **(Multiple Recovery)**

12  15.   As an affirmative defense to all Causes of Action in the Complaint, Defendant

13  alleges, upon information and belief, that Plaintiff's claims are barred, in whole or in part, to the

14  extent that Plaintiff seeks a multiple recovery for the same alleged wrong or wrongs.

15  **FOURTEENTH AFFIRMATIVE DEFENSE**

16  **(Failure to State A Cause of Action)**

17  16.   Plaintiff's Complaint, and each and every Cause of Action alleged therein, fails to

18  state facts sufficient to constitute a valid claim for relief or cause of action against Defendant.

19  **FIFTEENTH AFFIRMATIVE DEFENSE**

20  **(LMRA Preemption)**

21  17.   Defendant alleges that Plaintiff's Complaint, and some or all of Plaintiff's Causes

22  of Action, are substantially dependent upon an analysis of the provisions, terms and conditions of

23  a collective bargaining agreement between Defendant and the labor union(s) representing Plaintiff

24  and some or all of the putative class, and that said Complaint and Causes of Action are therefore

25  preempted by Section 301 of the Labor Management Relations Act and other applicable

26  provisions of federal law.  29 U.S.C. § 185(a).

27

28

4849-0391-2110.1                             - 5 -

1

## SIXTEENTH AFFIRMATIVE DEFENSE

2

### (Statute of Limitations)

3      18.     As an affirmative defense to all Causes of Action in the Complaint, Defendant

4    alleges, upon information and belief, that Plaintiff's claims are barred, in whole or in part, by the

5    statute of limitations contained, to the extent applicable, in California Code of Civil Procedure

6    sections 337, 338, 339, 340 and 343, section 10(b) of the National Labor Relations Act (29 U.S.C.

7    § 160(b)), Labor Code section 203(b), and any other such statutes of limitation which may be

8    applicable according to California or federal law.

9

## SEVENTEENTH AFFIRMATIVE DEFENSE

10

### (Additional Affirmative Defenses)

11      19.     As an affirmative defense to all Causes of Action in the Complaint, Defendant

12    alleges, upon information and belief, that Defendants have insufficient knowledge or information

13    upon which to form a belief as to whether it may have additional, as yet unstated, separate

14    defenses available.  Defendants reserve the right to amend this Answer to add, delete, or modify

15    defenses based upon legal theories that may or will be divulged through clarification of Plaintiff's

16    Complaint through discovery, through further legal analysis of Plaintiff's position in this

17    litigation, or otherwise.

18      WHEREFORE, Defendant prays for judgment as follows:

19      1.     That the Complaint be dismissed with prejudice in its entirety;

20      2.     That judgment be awarded in favor of Defendant and against Plaintiff;

21      3.     That Defendant be awarded its costs of suit, including reasonable attorneys' fees;

22      4.     That Plaintiff's class action allegations be stricken, stayed or dismissed with

23    prejudice; and

24      5.     That Defendant be awarded such other and further relief as the Court deems just

25    and proper.

26

27

28

4849-0391-2110.1                                    - 6 -

1

2

3    Dated: December 13, 2019                    NIXON PEABODY LLP

4
                                                 By:
5                                                     Fennie Glatzer
                                                      Jade Butman
6                                                     Attorneys for Defendant
                                                      SIMS GROUP USA CORPORATION
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

**CASE NAME: Paea Sanft v. Sims Group USA Corporation**
**COURT:        San Mateo County Superior Court**
**CASE NO.:     19CIV06454**
**NP FILE:      416702.000066**

     I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is One Embarcadero Center, 32nd Floor, San Francisco, CA  94111. On December 13, 2019, I served a copy of the within document(s):

**ANSWER OF DEFENDANT SIMS GROUP USA CORPORATION TO PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 382**

☐   **(BY FACSIMILE)** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒   **(BY MAIL)** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at San Francisco, California addressed as set forth below.

☐   **(BY COURIER)** by placing the document(s) listed above in a sealed  envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an agent for delivery.

☐   **(PERSONAL DELIVERY)** by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐   **(BY E-MAIL)** by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

James R. Hawkins, Esq.                        Attorneys for Plaintiff
Gregory Mauro, Esq.
Michael Calvo, Esq.
JAMES HAWKINS APLC
9880 Research Drive, Suite 800
Irvine, CA 92618
Tel.: (949) 387-7200
Fax: (949) 387-6676
Email: James@jameshawkinsaplc.com
Email: Greg@jameshawkinsaplc.com
Email: Michael@jameshawkinsaplc.com

     I am readily familiar with the firm's practice of collection and processing correspondence

4849-0391-2110.1

for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 13, 2019, at San Francisco, California.

Patricia Ortega

4849-0391-2110.1

- 2 -

PROOF OF SERVICE [CASE NO. 19CIV06454]

# Exhibit C

# COLLECTIVE BARGAINING

# <u>A G R E E M E N T</u>

**Commencement Date:**    August 16, 2017

**End Date:**    August 15, 2021

**Employer:**    SIMS METAL MANAGEMENT

**Union:**    FREIGHT, CONSTRUCTION, GENERAL DRIVERS, WAREHOUSEMEN AND HELPERS LOCAL NO. 287, I.B.T. (AFL-CIO), with respect to Employer's facility located at 1800 Monterey Highway, San Jose, California

**Union:**    TEAMSTERS LOCAL NO. 853, as successor to Local No. 216, I.B.T. (AFL-CIO), with respect to Employer's facility located at 699 Seaport Boulevard, Redwood City, California

1

## TABLE OF CONTENTS

| Section | Contents | Pages |
|---|---|---|
|  | Preamble & Recitals | 1 |
| I | Recognition of Collective Bargaining Representatives and Units | 1 |
| II | Hiring | 1 |
| III | Seniority | 2 |
| IV | Hours of Work | 5 |
| V | Shifts | 5 |
| VI | Overtime and Pay for Holiday Pay | 6 |
| VII | Holidays | 7 |
| VIII | Rates of Pay | 8 |
| IX | Wages | 8 |
| X | Paid Time Off (PTO) | 9 |
| XI | Absences; Funeral Leave | 10 |
| XII | Health & Welfare | 10 |
| XIII | Payment To Trust Funds | 11 |
| XIV | Health & Sanitation Regulations | 12 |
| XV | Discharge & Discrimination | 12 |
| XVI | Strikes & Lockouts | 13 |
| XVII | Visiting Shops | 13 |
| XVIII | Charitable Campaigns | 13 |
| XIX | Adjustments & Grievances | 13 |
| XX | Authority | 15 |
| XXI | Obligation | 15 |
| XXII | Validity | 16 |
| XXIII | Pronouns | 16 |
| XXIV | Pension Fund | 16 |
| XXV | Supplemental Income Plan 401(k) | 17 |
| XXVI | Job Steward | 17 |
| XXVII | Safety | 18 |
| XXVIII | Loading/Unloading | 18 |
| XXIX | Effective Date & Life | 18 |
| **Exhibits:** |  |  |
| A | Job Classifications |  |
| Notes | Notes to Exhibit A and A-1 |  |
| A-1 | Job Classifications – New Hires |  |
| **Appendix:** |  |  |
| A | Addiction Recovery & Substance Abuse Policy (8/16/96) revised |  |

## AGREEMENT

THIS AGREEMENT ("**Agreement**") is entered into on this 15ᵗʰ day of August 2017 ("**Effective Date**") by and between SIMSMETAL USA CORPORATION, dba Simsmetal America, hereinafter referred to as the "**Employer**," and the FREIGHT, CONSTRUCTION, GENERAL DRIVERS, WAREHOUSEMEN AND HELPERS LOCAL NO. 287, I.B.T. (AFL-CIO), with respect to Employer's facility located at 1800 Monterey Highway, San Jose, California, and TEAMSTERS LOCAL NO. 853, as successor to Local No. 216, I.B.T. (AFL-CIO), with respect to Employer's facility located at 699 Seaport Boulevard, Redwood City, California, hereinafter referred to collectively as the "**Union**:"

## WITNESSETH

WHEREAS the Employer is a dealer in metals for recycling in Northern California, and is desirous of employing competent workers, and

WHEREAS the Union is desirous of providing for the Employer a source of skilled and experienced workers, and

WHEREAS the Employer desires to avoid strikes and lockouts and to foster and maintain a harmonious relationship between the Employer and its Employees,

Now therefore, in consideration of the foregoing and the mutual covenants and agreements hereinafter contained the parties hereto agree as follows:

**I.**   **RECOGNITION OF COLLECTIVE BARGAINING REPRESENTATIVES AND UNITS**

A.   The Employer hereby recognizes the Union as the sole collective bargaining agency for all employees of the Employer within jurisdiction of said Union.  The Union hereby recognizes the exclusion from the bargaining unit of all office and clerical employees, guards, sales, technical and professional employees, and supervisors as defined in the Labor Management Relations Act of 1947, as amended.

B.   The term "Employee" as used herein shall mean each person represented by the Union, and the term "Employees" shall mean such persons represented collectively by the Union when such person or persons are in the employ of the Employer.

**II.**   **HIRING**

A.   The Employer may secure through the Union persons to perform work in the classifications set forth in Exhibits A and A-1 herein.

B.   The Employer may secure workers outside the Union.  The Employer agrees to furnish the Union, within forty-eight (48) hours of hire, the name of any person hired to perform work in the classifications set forth in Exhibits A and A-1.

In addition, the Employer will use all available equipment and Employees prior to subcontracting, unless subcontracting is the more reasonable business decision, in the Employer's estimation, under the circumstances.

Notwithstanding the foregoing, the Employer may subcontract work where it does not have the requisite equipment, or the available employees do not have the requisite skills, or in the case of emergency.

The Employer agrees to meet with the Union quarterly, upon request, to review data concerning subcontracting in the previous quarter.

C.      All persons covered by this Agreement shall be required, as a condition of continued employment, to become members in good standing of the Union prior to the sixty-first (61st) day following the beginning of employment.

D.      Employees covered by this Agreement, having fulfilled the requirements for Union membership, must remain members in good standing in the Union. Upon notice from the Union that any employee has been suspended, or expelled, the Employer shall discontinue the employment of such employee within five (5) days after receiving such notice.

E.      No employee or applicant for employment shall be discriminated against by reason of either membership or non-membership in a Union except to the extent that membership in the Union shall be a condition of employment as provided in Section II(C).

## III.      SENIORITY

A.      Seniority under this Agreement for all employees who have completed their new-hire probation shall be deemed to be length of service with the Employer.

1. All newly hired employees are subject to a probationary period for the first one hundred and eighty (180) calendar days of employment. Upon verbal notification to the Union at or before the expiration of the first one hundred and eighty (180) calendar days of employment, the Employer in the exercise of its business judgment may extend the new-hire probationary period for an additional sixty (60) days.

2. New employees who have not completed their probation shall be ineligible to bid for posted positions.

3. New employees who are terminated for any reason prior to completion of their probation shall not have recourse to Section XVIII of this Agreement.

B. In the event the Employer determines to lay off employees, employees shall be laid off within classifications, work units, and/or departments. Employees whose qualifications are, as determined by the Employer, best suited for the work remaining after the layoffs shall be laid off last. Employees on layoff status for one hundred eighty (180) calendar days shall lose all seniority and shall be deemed terminated.

C.  In the event the Employer determines to increase the number of employees, employees with seniority and on layoff status shall be recalled in the order of seniority; provided, that such laid off employees with seniority are, as determined by the Employer, qualified to perform the duties of the position.  Employees on layoff status and with seniority whose qualifications are best suited for the job opening(s) shall be recalled first.  In the event two or more employees with seniority and on layoff status are substantially equal in qualifications, the Employer shall give priority to such laid off employees based on their seniority

1.  Notice of recall from layoff shall be attempted telephonically and by certified mail to the employee's last known residential address and telephone number as reflected in the Employer's records, and shall be confirmed by facsimile transmission to the Union on the same day.  Failure to report for work on the date and at the time specified in the notice of recall, provided that such date and time is not less than forty-eight (48) hours from the time of the facsimile transmission to the Union, shall result in termination.

2.  The Employer may secure temporary help from any source, including non-bargaining unit personnel, pending return to work of a recalled employee.

3.  The Employer may require as a condition of recall that any employee who will have been, at the time of first reporting to work after recall, on layoff status for thirty (30) or more calendar days to pass any drug/alcohol test required of new hires.  The Employer shall pay for such test.

D.  The Employer shall post notices of job openings covered by this Agreement (other than for the Picker-Sorter-Cleaner and Sub-Foreperson positions, which the Employer may fill unilaterally) and shall accept bids for five (5) days before hiring a new employee for such openings.  Such notices shall be posted in English and Spanish; the English version shall prevail in the event there is any discrepancy between the English and Spanish versions of the notices.

1.  If the Employer determines there are one or more employees qualified for the open position for which bids have been solicited, the Employer shall select as the successful bidder the employee whose qualifications are, as determined by the Employer, best suited for the posted position.  In the event two or more bidders are substantially equal in qualifications, the Employer shall consider their prior twelve (12) months' attendance and their seniority in making its selection among the bidders.  If the Employer determines there are no qualified bidders, the Employer may hire directly as provided in Article II of this Agreement.

2.  Employees selected for a posted position shall be on probation in their new positions for sixty (60) calendar days.  Upon written notification to the Union at or before the expiration of the initial 60-day probationary period, the Employer in the exercise of its business judgment may extend this probationary period for an additional sixty (60) calendar days.

3.  Selectees while on probation may, after consultation with the probationary employee and the Union, be returned by the Employer to the position occupied immediately prior to selection.  Thereafter, the Employer may award the position to any other bidder or may post the opening anew.  If no one else bid for the position, or if the other bidders

were, as determined by the Employer, not qualified for the position, the Employer may hire a new employee for the position.

    4. The Employer may fill the posted position temporarily from any source, including non-bargaining unit personnel, pending the completion of the bidding process and the assignment of the selectee to the posted position.

    E. Disagreements over the Employer's administration of this Section III shall be resolved exclusively through Section XVIII of this Agreement. In case of a deadlock by the Board of Adjustment regarding the issue of qualifications, the Employer's administration of this Section III regarding qualifications shall be deemed confirmed; *provided*, only disputes over the Employer's determinations of qualifications for layoff, recall, or job bid eligibility under Sections III.B-D of this Agreement, and no other issues arising under Section III regarding the issue of qualifications, shall be subject to the arbitration procedures of Section XVIII, and then only under the following terms and conditions, which shall prevail over any contrary provisions of this Agreement.

    1. The Employer's determination of qualifications may be reversed only if the Union proves by clear and convincing evidence that the Employer's determination results from nepotism and/or favoritism, to the exclusion of any business justification whatsoever.

    2. Within five (5) business days of a deadlock of the Board of Adjustment, the Union may request arbitration only by detailing in writing the facts which constitute nepotism and/or favoritism and exclude a business justification for the Employer's administration of Section III. The Union's failure timely and sufficiently to request arbitration in this manner shall bar the grievance.

    3. The Union's case-in-chief in arbitration shall be limited by its written request for arbitration pursuant to the preceding paragraph. If the Employer articulates a business justification for its administration of this Section III, the Union may prevail only upon proof by clear and convincing evidence that the Employer's business justification is pre-textual.

    4. The Union shall bear all costs of the arbitration, except for the Employer's attorneys' fees.

    F. "Qualifications" shall include, but not be limited to, ability, skill, experience, training, applicable current licenses and certifications, past performance, attendance history, and disciplinary history.

    G. Except for arbitrations regarding the issue of qualifications arising under Section III.E, and notwithstanding contrary provisions of Section XVIII.D.3, the costs (excluding attorney's fees) of any arbitration arising under Article III shall be entirely allocated to the non-prevailing party.

    H. If an employee is placed on leave of absence because of an on-the-job injury, that employee shall not lose the seniority he or she had at the time of the on-the-job injury for a period of two (2) years from the date of the on-the-job injury.

## IV.        HOURS OF WORK

A.        Forty (40) hours from Monday through Sunday, consisting of five (5) consecutive 8-hour workdays or four (4) 10-hour workdays as the Employer shall from time to time determine for employees, classifications, and/or shifts, shall constitute a regular workweek. The Employer shall use its best efforts to schedule at least two (2) consecutive days off for 4x10 employees.

B.        After no more than five (5) hours in any workday, employees shall be afforded a one-hour, off-duty meal period.  By mutual consent between the Employer and the Union, the meal period may be changed to thirty (30) minutes.

C.        Company shall authorize and permit employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The authorized rest period shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.  However, a rest period need not be authorized for employees when total daily work time is less than three and one-half (3-1/2) hours.  Authorized rest period time shall be counted as hours worked for which there shall be no deduction of wages.

## V.        SHIFTS

A.        First shift shall be any nine (9) [eleven (11) for 4x10 employees] hour period less a one hour period for meals on the employee's time, or an eight and one-half (8½) [ten and one-half (10½) for 4x10 employees] hour period, less thirty (30) minutes for meals on the employee's time, starting between the hours of 4:00 a.m. and 3:59 p.m. Pay for the first shift hours shall be at the regular day shift hourly rate.

B.        Second shift, when employed, shall be any eight and one-half (8-1/2) [ten and one-half (10-1/2) for 4 x 10 employees] hour period, less thirty (30) minutes for meals on the employee's time, starting between 3:59 p.m. and 3:59 a.m.  Pay for second shift hours worked shall be at the regular day shift hourly rate plus Eighty-Five Cents ($0.85) per hour premium.

C.        Shifts may be changed by mutual consent between the Employer, the employee and the Union, except that the Company, at its option, can start a shift for any employee between the appropriate hours listed in paragraphs (A) and (B) above.

D.        First shift employees who report to work at the regular established starting time, unless instructed to the contrary the previous night, and are not put to work, shall be paid two (2) hours pay at the regular day shift hourly rate.

E.        Second shift employees who report to work at the regular established starting time for that shift, unless instructed to the contrary the previous night, and are not put to work, shall be paid two (2) hours pay at the regular day shift hourly rate plus Eighty-Five Cents ($.85) second shift premium.

F.      First shift employees who report at the regular established starting time, and are put to work, and who work less than four (4) hours, shall be paid a minimum of four (4) hours at the regular day shift hourly rate.

G.      Second shift employees who report to work at the regular established starting time for that shift, and are put to work, and who work less than four (4) hours, shall be paid a minimum of four (4) hours at the regular day shift hourly rate plus Eighty-Five Cents ($.85) per hour second shift premium.

H.      Emergencies or inclement weather conditions shall be excepted as related to Section V(D) through (G).

I.      Employees who, of their own will, leave work prior to the end of their shift, shall be paid only for the hours worked.

J.      When an employee, due to an accident, is injured while on the job, if that employee is sent to a medical doctor and that M.D. certifies in writing that the employee cannot return to work that day, the employee shall be paid for the number of hours he/she was scheduled to work that day. It is also understood that if such employee is compensated at another time from any other source for the same day as the Company paid him/her for, the employee will immediately reimburse the Company the amount originally received for that day's compensation.   The Company will allow an employee time off without pay for medical appointments with a workers compensation doctor when there is no other time available for the doctor to see him before or after a scheduled shift.

## VI.      OVERTIME AND PAY FOR HOLIDAY PAY

A.      All work performed in excess of eight (8) hours worked in any one workday [in excess of ten (10) hours per day for 4x10 employees] or forty (40) hours worked in any one workweek shall be paid at the rate of time and one-half the hourly rate otherwise applicable to the work.

B.      All work performed on Sunday shall be paid at double the rate otherwise applicable to the work.  All work performed on the sixth day worked in a regular workweek [and fifth day worked in 4x10 employees] shall be paid at one and one-half times the hourly rate otherwise applicable to the work.  All work performed on Saturday will be compensated at time and one half (1 ½) the appropriate rate, subject to VI.C below.

C.      If an employee works twenty-four (24) hours in a work week that contains a holiday, or a PTO day that was approved seven (7) days in advance, any work on Saturday of that week shall be paid at time and one-half (1 ½); otherwise an employee shall not receive Saturday overtime until the employee has worked forty (40) hours in that workweek.

D.      An employee who is called back to work after the completion of his normal shift shall be paid a minimum of two (2) hours at the applicable rate.

E.      If an employee is required to work on a holiday, as set forth in Section VII, he shall receive in addition to holiday pay, a day's pay at time and one-half (1-1/2) his regular straight time rate of pay.  However, at the employer's option, the employee shall be paid time and one half for such work and, in addition, be given an additional day off, with pay, to be mutually arranged between the employer and the individual employee.

F.      Where the Employer has advance knowledge of the need for weekend production work, the Employer shall so notify employees by the preceding Thursday night, when possible.

Daily Overtime - The employer shall make every effort, when possible, to notify its employees of required overtime to be worked at least one (1) hour before the end of the shift.

G.      All work performed over twelve (12) hours in one day shall be paid at double time.

**VII.      HOLIDAYS**

A.      The following days are recognized as paid holidays:

| | |
|---|---|
| New Year's Day | Thanksgiving day |
| President's Day | The day after Thanksgiving |
| Memorial Day | December 24 (day before Christmas) |
| July 4th | Christmas Day |
| Labor Day | December 31 (day before New Year's Day) |

B.      Each employee shall be paid at his or her regular day shift hourly rate for eight (8) hours [ten (10) hours for 4x10 employees] for each recognized paid holiday, *provided*, that the employee has been in the active employ of the Employer for the 60-day period immediately preceding the holiday; and *provided further*, that the employee works, is on approved vacation, is off work due to an industrial injury, is hospitalized as an inpatient, or is otherwise excused from work by the Employer.

C.      Should a recognized holiday fall during the employee's vacation period, he shall receive eight (8) hours holiday pay at his regular day shift hourly rate in addition to his vacation pay, or, at the Employer's option, the employee shall take an additional day off with eight (8) hours pay at his regular day shift hourly rate.

**VIII.      RATES OF PAY**

A.    The Employer agrees to pay the wage scales for the various classifications set forth in the Schedule of Wages in Exhibit A to this Agreement; *provided*, however, that no employee's regular hourly wage rate, before the application of any shift premium, shall be reduced as a result of the signing of this Agreement.  These wages shall be paid weekly.

B.    An employee who is assigned to a higher level job will receive the pay rate of the new job within sixty (60) days.  If in the judgment of the Employer, the employee is not qualified to regularly perform this work within the sixty (60) day period, he will be so notified and reassigned.

C.    When an employee is sent by the Employer on an overnight trip, the Employer shall provide a Twenty Dollar ($20) meal allowance and shall also reimburse the employee for all reasonable lodging costs incurred.

D.    All employees hired on or after the effective date of this Agreement shall be paid in accordance with the Schedule of Wages in Exhibit A-1.  The Employer shall not, when laying off employees holding classifications under Exhibit A, consider any difference in base wage rates between Exhibit A and Exhibit A-1.

E.    The wage rates set forth herein are minimums and nothing precludes a higher hourly wage being paid to an individual employee.  The Employer shall notify the Union of all such higher hourly wages being paid to the individual employee.

F.    At any time, on a daily or hourly basis, the Company can assign an employee in one job classification to work in another job classification, *provided,* that the Company pays the employee the higher hourly pay rate for the shift.

G.    Employees receiving above-scale premium rates shall receive negotiated cents-per-hour increases only at Employer's option (Employer may exercise option for each employee on an individual basis).

H.    When laying off employees in the same classification, the difference in wage rates between employees subject to Exhibits A and A-1 shall not be a factor.

I.    Union may reallocate wage increases set out in Exhibit A by deduction from wage increase to corresponding increase in the contribution to Health and Welfare and/or the Teamsters Pension Trust Funds and/or to the PEER Program, by providing Employer written notice at 30 days in advance of such reallocation.

IX.    **WAGES**

A. All employees shall receive their wage increase each year (on contract anniversary date)

| 1st Year | 8/16/17 | $1.13 |
|----------|---------|-------|
| 2nd year | 8/16/18 | $0.90 |

| 3rd year | 8/16/19 | $0.90 |
| 4th year | 8/16/20 | $0.90 |
| 5th year | 8/16/21 | $0.90 |

## X.        PAID TIME OFF (PTO)

**Employees shall accrue Paid Time Off ("PTO") on a pro rate basis at the rates in the following table:**

| Employment Service | Hours of PTO |
|---|---|
| Year 1 | 40 |
| Year 2-9 | 80 |
| Year 10-19 | 120 |
| Year 20 and above | 160 |

PTO must be scheduled with the approval of the employer. Employees must request PTO in writing on the company form at least three (3) weeks in advance, except in the case of illness or emergency. Pre-scheduled PTO shall be scheduled so as not to interrupt any operation or department. The preference of employees in scheduling PTO shall be considered in order of seniority. Every time an employee is going to be late or absent, they must inform their supervisor or manager at least one (1) hour before the beginning of your workday.

The purpose of Paid Time Off (PTO) is to provide employees with flexible paid time off from work that can be used for such needs as vacation, doctor appointments, school, volunteerism, and other activities of the employee's choice. PTO may also be used for the employee's illness, or the illness of a family member, including a spouse, child, parent, registered domestic partner, grandparent, grandchild or sibling. "Child" means a biological, adopted, or foster child, stepchild, legal ward, or a child to whom the employee stands in *loco parentis*. "Parent" means a biological, adoptive, or foster parent, stepparent, or legal guardian of an employee or the employee's spouse or registered domestic partner, or a person who stood in *loco parentis* when the employee was a minor child.

Employees who miss more than three (3) consecutive unscheduled days due to illness or injury are required to present a doctor's release to the Human Resources department that permits them to return to work.

Employees shall be given their check for pre-scheduled PTO immediately prior to taking same. The PTO check shall have no greater tax deduction than if the gross amount were paid by separate checks.

Yearly PTO accruals must be used by the end of the following year.  PTO may not be deferred. Employees shall be paid for all accrued unused PTO upon termination.

## XI.    ABSENCES AND FUNERAL LEAVE

A.    Prompt and dependable attendance is required of all employees.   The Employer may, after consultation with the Union, publish new or revised attendance and punctuality standards and prescribe discipline for violations of such standards. The Employer may require certification by a medical doctor for any absence attributed to illness or injury.

B.    In the event of a death in the family (father, mother, spouse, brother, sister, son, or daughter), a regular employee shall be allowed two (2) days off with pay, increased to three (3) days if necessary to attend a funeral outside California.  The Employer may request reasonable proof of death and funeral location.

## XII.    HEALTH AND WELFARE

A.    No employee will be required to take out insurance other than required by law.

B.    The Employer and the Union shall establish a Trust Fund, to be designated as the "Teamsters Benefit Trust" (for employees represented by Local 287) and  the "Teamsters Managed Healthcare Trust" (for employees represented by Local 853) for the purpose of providing, for the benefit of employees and their dependents, for any or all of the following: Life, accident, and medical, hospital expenses, dental expenses, and orthodontia, prescription drug, and vision care. Such Trust Funds shall be administered by separate Boards of Trustees on which the Employers and the employees are equally represented.

C.    Effective September 1, 2006, the Trust Fund shall provide for a multiple choice plan with an indemnity plan as one of the choices and with Kaiser Plan as another choice. The Trustees will establish procedures under which the multiple choice program will be implemented and will administer procedures under which the program will take effect. The Union at its option, at any time during the life of the Agreement can withdraw from the Trust Fund and use the dollars the Employer was paying to the Fund at the time to purchase benefits of its choice in lieu of the Fund's benefit program.

The Employer shall make such contributions each month to the Trust Funds, on behalf of each employee who works a minimum of eighty (80) hours in the month, as required by the Trust Funds to maintain the benefits provided by TBT Plan V-A (for employees represented by Local 287) and the benefits provided by TMHT, Life Plan L10, Medical Plan M20II & Dental Plan D5 (for employees represented by Local 853).  For employees represented by Local 287, the Employer's share of the monthly contributions is currently $1,100.30 per employee, with an

additional $571.70 currently contributed per employee out of employee wages. For employees represented by Local 853, the Employer's share of the monthly contributions is currently $1,157.47 per employee, with an additional $276.53 currently contributed per employee out of employee wages.

Such payments shall be made in addition to all wages and other compensation provided in this Agreement, and such payments shall be made without any deduction for any purpose whatsoever, except as may be required by law. Such payments shall be due on the tenth day of the calendar month, and shall be paid not later than the twentieth of the same month. The Union, and the employees, shall have the same rights and remedies in the event of the failure of any Employer to make such payments as presently exist with respect to the nonpayment of wages. The liability of Employer for the monthly payments herein provided shall be limited to payments on behalf of its own employees. The individual Employer shall be responsible for the doctor and hospital bills in the event of his failure to pay the Health and Welfare premiums.

In the event the either Trust increases the Plan contribution rate or cost during the term of the Agreement in an amount exceeding the contribution rate established in this paragraph, the Employer shall pay the full contribution rate established by the Trust for each participant and shall adjust the participant's applicable wage rate by an amount sufficient to offset that portion of the increased contribution or cost which exceeds the rates established in this Agreement.

For the purpose of this H&W section only, vacation, holidays, sick leave, jury duty and funeral leave, time paid but not worked, shall be considered as time worked.

D.    A regular employee, with respect to whom such monthly payments are required to be made, shall mean that eligibility is to be based on employees having worked eighty (80) hours or more in the previous calendar month.

Employees with seniority who are required to attend up to two weeks of reserve military training each year and who fail to complete the 80 hours eligibility for health and welfare coverage required by this Agreement solely by reason of absence from work to attend such two week military training shall be deemed to have completed the 80 hours' eligibility and the employer shall remit the regular monthly contribution to the trust fund on such employee's behalf not to exceed one month's premium for each such employee each year.

E.    The Employer shall make monthly Health & welfare payments for all regular employees injured on the job, or on leave under the Family Medical Leave Act, up to a maximum of three (3) months. Employee's with Seniority who are off the job due to a qualified FMLA illness or injury shall be entitled to apply & qualify for a waiver of premium coverage up to three months if justified by the trust. It is understood that the Employer shall not be responsible for payments of premiums during this waiver period.

F.    In accordance with this Agreement and only to the extent allowed by law and without any cost or penalty to Employer, Employer payments to the Health and Welfare Trust Fund and employee co-payments for his or her Health and Welfare costs shall be made without any deduction for employee income taxes (otherwise known as on a "pre-tax" basis).

G.      Health Care Reform:  If health care reform laws, rules, and/or regulations enacted by the United States, or California, mandate higher health care costs to the Employer other than are required by this agreement, the Employer can, at its option, reopen this labor agreement and negotiate with Union regarding such economic matters.

## XIII.   PAYMENT TO TRUST FUNDS

A.      In respect to all payments to Trust Funds as provided in Section XII and Section XXIV, time is of the essence.  The parties hereto recognize and acknowledge that the prompt payments of amounts due by the Employer pursuant to these Sections are essential to the maintenance in effect of the various Funds and Plans involved, and that it would be extremely difficult, if not impractical, to fix the actual expense and damage to the parties hereto and to the Funds which would result from the failure of the Employer to make the monthly payments in full within the time provided.  Liquidated damages for the Western Conference of Teamsters Pension Trust Fund shall be in accordance with the rules adopted by the Trustees of said Fund.

B.      If an Employer defaults in any of the payments provided for under said Section, then, in addition to the amount or amounts due and the liquidated damages provided herein, there shall be added to the obligation of the Employer who is in default, in each case, all reasonable attorney fees incurred by the Administrators of the separate Funds or by any party hereto, in collection of the same.

C.      In enforcing the liability of any participating Employer to the Trust Funds or any one or ones of them, the several Trust Funds and Boards of Trustees of the same shall not be bound by Section XVIII - Adjustments and Grievances.

## XIV.        HEALTH AND SANITATION REGULATIONS

A.      Drinking fountains, hot water and soap, and first aid equipment must be available on the premises at all times.

B.      The Employer agrees to observe all laws and regulations pertaining to safety, health and sanitation.

C.      The employee agrees to observe all Company rules and regulations and all laws and regulations with regard to health, safety and sanitation.

D.      The Employer agrees to provide one pair of gloves to each employee.  An employee shall be entitled to a new pair of gloves upon delivering his present pair of gloves to the Employer, provided such present pair is no longer effective.  Section XIII(B) is applicable to this paragraph.

## XV.        DISCHARGE AND DISCRIMINATION

A.     The Employer reserves unto itself the right to discharge any person in its employ for just cause, and to designate the number of persons necessary to the performance of any particular task or service.  Notice of discharge shall be by certified mail, telefax or hand delivery to the Union.  The Union shall have five (5) days, exclusive of Saturdays, Sundays, and holidays, after receipt of such notice of discharge to protest in writing, and if not presented within such period, the right of protest shall be waived.

Time limits can be waived by mutual consent and such consent will not be unreasonably withheld by either party.

B.     In the event discipline is required which does not warrant discharge at the first offense, the Employer will notify the employee of the offense by letter with a copy to the Union representative.  This written warning will be given to the employee in the presence of the shop steward.

C.     The Employer agrees that no employee shall be discharged, discriminated against or penalized because of his activities in the Union or carrying out the duties prescribed by the Union for him to act upon, providing it does not interfere with his regular employment.

D.     The Employer and the Union recognize their respective responsibilities under State and Federal laws relating to fair employment practices, and they agree to comply in their respective areas of authority.  They reaffirm that during the term of this Agreement there shall be no discrimination toward any employee or applicant for employment because of sex, age, race, creed, color or national origin.

## XVI.        STRIKES AND LOCKOUTS

During the term of this Agreement, there shall be no strikes, including sympathy strikes, lockouts, or cessation of work for any reason whatsoever by any party.  However, it shall not be a violation of this Agreement for an employee to refuse to cross a picket line at a customer location if such picket line is sanctioned by Joint Council 7.  In the event of such refusal, it shall not be a violation of this Agreement for the Employer to make any other arrangements to conduct its business with such customer during the pendency of the labor dispute at the customer location.

## XVII.        VISITING SHOPS

It is agreed by both parties hereto that for the purpose of carrying out and enforcing the terms of this Agreement and collection of dues, the duly authorized representative of the Union shall have the right to visit and enter the establishment of the Employer between the hours of 6:00 a.m. and 6:00 p.m., Monday through Saturday, subject to first checking in at the Employer's main office at the respective establishment and then observing the Employer's rules for visitors.

## XVIII.    CHARITABLE CAMPAIGNS

The Union shall and hereby agrees to conduct and handle any and all campaigns and drives for charitable purposes among its membership in such instances as it deems advisable, but in no event shall the Employer conduct any charitable campaigns among its employees.

## XVIX.    ADJUSTMENTS AND GRIEVANCES

### A.    Step One.

Should any difference arise concerning the provisions of this Agreement that cannot be satisfactorily adjusted between the Employer and the employee(s), the employee shall verbally submit the grievance to his/her supervisor within 48 hours of the occurrence or knowledge of the occurrence giving rise to the dispute.

### B.    Step Two.

If no satisfactory settlement is reached in STEP ONE, the grievance shall be reduced to writing and shall be presented to the plant manager within five (5) working days of its occurrence or knowledge of the occurrence.  Following receipt of the formal grievance by the manager, he/she shall give his/her written answer within five (5) working days.

Both the Employer and the Union agree that the following procedure shall be followed in the adjustment or settlement of all grievances and differences of opinion regarding the interpretation or application of this Agreement.  All grievances not filed in writing within five (5) days after they occur shall be considered out-dated and untimely thus preventing an accumulation of grievances.  The Company will make every effort to respond in writing earlier than the five (5) days allowed, when possible.  If the Company does not respond in a timely manner, the Company's response shall be considered a denial of the grievance and the next step is automatically proceeded to.

### C.    Step Three.

If the grievance is not resolved in STEP TWO, the grievant or the steward can refer it to the Union Business Representative who in turn will discuss it and attempt to settle the grievance with a designated representative of the employer within five (5) working days of the STEP TWO decision.  If the matter is not referred to the union business representative in a timely manner, the grievance shall be considered withdrawn.  If the Business Agent of the Union and the designated employer representative cannot arrive at a satisfactory settlement, the grievance will proceed to STEP FOUR.  To proceed to STEP FOUR, the grievance must be submitted in writing to the Board of Adjustment within ten (10) Working days of the STEP TWO decision.

### D.    Step Four.

This step shall be a Board of Adjustment which shall function as follows:

1.      Any controversy that is not adjudicated as outlined above by the parties to this Agreement can be submitted in writing to the Board of Adjustment within the time limits stated in STEP THREE above.

2.      The Board of Adjustment shall consist of two (2) representatives of the Union and two (2) representatives of the Employer.  The Board must meet within ten (10) days of receipt of notice of grievance at STEP FOUR.  A majority vote of the Board of Adjustment on any issue shall be final and binding upon the parties to the Agreement.  In the event that the Board of Adjustment is deadlocked, the matter shall be referred to arbitration, but must be submitted by the party requesting arbitration within seven (7) days of the deadlock of the four (4) member Board or the grievance will be deemed to have been withdrawn.  Supervisors of Company involved directly in lower steps of a grievance shall not sit on Adjustment Board.

3.      **Arbitration.**  The parties agree they will select a mutually acceptable arbitrator and the decision of the arbitrator shall be final and binding upon the parties.  The arbitrator shall not have the power or authority to add to, subtract from, or modify the terms of this Agreement or any Supplemental Agreements.  The Arbitrator shall render his decision within ten (10) days of the hearing date.  The cost of arbitration shall be shared equally by the parties, except where Article III provides for a different allocation.  If the parties cannot agree on an arbitrator, the Federal Mediation and Conciliation Service will be requested to supply a panel of seven names.  The parties shall choose for the right to strike a name first and then, by a process of striking names, an arbitrator shall be chosen.

4.      The grievance procedure and arbitration provided for herein shall constitute the sole and exclusive method of determining settlements between the parties of any and all grievances herein defined.

5.      Any time specified herein shall not include any time on any Saturday, Sunday, or holiday.  Time limits set forth herein may be waived by mutual agreement of the parties.

6.      It is further agreed that consistent with applicable law and other provisions of this labor contract, there shall be no cessation of work or lockout during such arbitration and the findings of the arbitration board shall be binding upon all parties signatory to this Agreement.

## XX.     AUTHORITY

A.      The undersigned Employer representative or official warrants, asserts and agrees that this document is executed by him with full authority to represent and bind the entity for which he is signing.

B.     The undersigned Union representative or official warrants, asserts and agrees that this document is executed by him with full authority to represent and bind the Union, its officers, directors and members.

## XXI.     OBLIGATION

A.     If this Agreement is signed on behalf of a named partnership by one of the partners, his signature shall bind the partnership and each partner individually.

B.     The Employer promises that if the operations covered by this contract are sold and/or merged, the successor employer will be provided with a copy of this Agreement and will be requested to honor its contents.  In addition, the Employer promises to notify the Unions in a timely fashion regarding the planned sale or merger and negotiate regarding the adverse effects of such action upon the Employees and comply with all applicable federal statutes, including, but not limited to, ERISA, WARN and the NLRA.

## XXII.     VALIDITY

If any provision of this Agreement is declared invalid, or the applicability thereof to any person, circumstances or thing is held invalid, the validity of the remainder of this Agreement and/or the applicability thereof to any other person, circumstances or thing shall not be affected thereby.

## XXIII.     PRONOUNS

Masculine pronouns used in this Agreement shall apply to both sexes.

## XXIV.     PENSION FUND

A.     Effective August 16, 2017, the Employer shall contribute One Dollar and Sixty-Three Cents per compensable hour, up to a maximum of Two Hundred and Eight-Two Dollars and Fifty-Three Cents ($282.53) per month to the Western Conference of Teamsters Pension Trust Fund on behalf of each Local 287 employee. This shall be allocated as follows:  an accrual rate of one dollar and fifty-three cents per hour, and a PEER/84 rate of ten cents ($0.10) per hour.  The additional contribution for the PEER/84 must at all times be 6.5% of the basic contribution, and cannot be decreased or discontinued at any time.  Effective August 16, 2017, the Employer shall contribute Sixty-Nine Cents ($0.69) per compensable hour, up to a maximum of One Hundred and Nineteen Dollars and Sixty Cents ($119.60) per month to the Western Conference of Teamsters Pension Trust Fund on behalf of each Local 853 employee.

B.     For the purpose of this Article, compensable hours shall mean all hours worked or paid for.

C.     Except as provided in paragraph B above, the parties hereto agree to be bound by the Western Conference of Teamsters Pension Trust Fund, which shall be jointly

administered by a Board of Trustees composed of representatives of management and labor.

D.      Employer will review and consider Union implementation of SIP 401(k) Plan with all costs and expenses solely for Union's account (including without limitation all costs and responsibility for administration of such Plan.)  Union to provide documentation for Employer's review.

E.      The following provision is subject to the approval of the Western Conference of Teamsters Pension Fund Board of Trustees:

If additional pension contributions are required by government regulation or otherwise, the Employer shall make the additional contributions and adjust the Employees' applicable wage rate by an amount sufficient to offset the increased contributions which exceed the rates established in this Agreement.


## XXV.      SUPPLEMENTAL INCOME PLAN 401(K)

The Employer agrees to participate in the Supplemental Income 401(k) Plan, by agreeing to make pre-tax deductions from employee's payroll, and forward those deductions on a timely basis to the S.I.P. 401(k) Plan.  Participation by employees shall be on a voluntary, individual basis.

The Supplemental Income Plan 401(k) is a plan intended to conform to the requirements of the Internal Revenue Code 401(k) for certain tax-exempt employee contributory plans.  The Employer's obligation to the Plan created by this Agreement is limited to:

A. The timely execution of the Plan's Subscriber Agreement.

B. The timely deduction and payment to the Plan of that portion of wages employees elect to divert to the Plan.

C. The payment of the monthly operational fee on behalf of each contributing employee, up to a maximum of $1.00 per month per contributing employee.


## XXVI.      JOB STEWARD

The Employer recognizes the right of the Local Union to designate job stewards and alternates from the Employer's seniority list.  The authority of job stewards and alternates so designated by the Local Union shall be limited to, and shall not exceed, the following duties and activities.

      A.     The investigation and presentation of grievances with his Employer or designated company representative in accordance with the provisions of the collective bargaining agreements.

      B.     The transmission of such messages and information, which shall originate with, and are authorized by the Local Union or its officers, provided such message and information:

      1.     have been reduced to writing; or

      2.     if not reduced to writing, are of a routine nature and to not involve work stoppages, slowdowns, refusal to handle goods, or any other interference with the Employer's business.

      C.     Job Stewards and alternates have no authority to take strike action interrupting the Employer's business.

      D.     The steward, only at the employer's request, may investigate, present, and process grievances on company property without loss of time and pay during regular working hours, provided it does not interrupt the employer's operation.

## XXVII.    SAFETY

Company will comply with all applicable safety laws and make its best efforts to provide a clean, safe work environment. The Company further agrees to continue to provide safe and sanitary conditions in the plant and to provide adequate devices where necessary for the health and safety of employees.

## XXVIII.    LOADING/UNLOADING

When a buyer or customer enters the plant to either load or unload material, they shall be able and permitted to do so without having to wait for the availability of union plant personnel.

## XXIX.    EFFECTIVE DATE AND LIFE

This Agreement shall be in full force and effective from August 16, 2017, to and including August 15, 2021. This Agreement shall furthermore continue in effect thereafter from year to year unless either party hereto should give notice to the other party in writing of a desire to change or revise this Agreement or part thereof. Such written notice shall be presented to the other party not less than sixty (60) days prior to the renewal date and shall specify changes desired; during such sixty (60) day period, conferences shall be held looking toward a revision of this Agreement; there shall be no cessation of work or lockout during such conferences.

Executed this _____ day of _____ , 20____ .

**SIMS METAL MANAGEMENT**

**FREIGHT, CONSTRUCTION,
GENERAL DRIVERS,
WAREHOUSEMEN AND HELPERS
LOCAL NO. 287, I.B.T.**

By _____ Via Cagp Patil

By _____

By _____

By _____

**TEAMSTERS LOCAL NO. 853, I.B.T.**

By _____

By _____

## EXHIBIT A

*The Union reserves the right to allocate the below increases to Health & Welfare or Pension with written notice to the Company.

| Position | 8/16/2014 | 8/16/2015 | 8/16/2016 | 8/16/2017 | 8/16/18 | 8/16/19 | 8/16/20 | 8/16/2 |
|---|---|---|---|---|---|---|---|---|
| | | $0.35 | $0.61 | $1.13 | +$0.90* | +$0.90* | +$0.90* | +$0.90 |
| Picker-Sorter-Cleaner | 15.07 | 15.42 | 16.03 | 16.64 | | | | |
| Laborer | 18.54 | 18.89 | 19.50 | 20.63 | | | | |
| Shear Person | 17.96 | 18.31 | 18.92 | 20.05 | | | | |
| Burner | 17.96 | 18.31 | 18.92 | 20.05 | | | | |
| Metal Sorter | 17.96 | 18.31 | 18.92 | 20.05 | | | | |
| Scale Helper | 17.96 | 18.31 | 18.92 | 20.05 | | | | |
| Lift Truck Driver | 17.96 | 18.31 | 18.92 | 20.05 | | | | |
| Metal Cleaner | 17.96 | 18.31 | 18.92 | 20.05 | | | | |
| Non-Ferrous Baler Operator | 17.96 | 18.31 | 18.92 | 20.05 | | | | |
| Storekeeper | 18.90 | 19.25 | 19.86 | 20.99 | | | | |
| Tin Press Operator | 18.90 | 19.25 | 19.86 | 20.99 | | | | |
| Shear Operator-Guillotine | 18.90 | 19.25 | 19.86 | 20.99 | | | | |
| Car Flattener Operator | 18.90 | 19.25 | 19.86 | 20.99 | | | | |
| Plasma Torch Person | 18.90 | 19.25 | 19.86 | 20.99 | | | | |
| Truck Driver | 19.06 | 19.41 | 20.02 | 21.15 | | | | |
| Maintenance Repair Person | 19.23 | 19.58 | 20.19 | 21.32 | | | | |
| Welder | 19.23 | 19.58 | 20.19 | 21.32 | | | | |
| Crane Operator | 19.23 | 19.58 | 20.19 | 21.32 | | | | |
| Sub-Foreperson | 19.32 | 19.67 | 20.28 | 21.41 | | | | |
| Sims Inter-Company Transit | 19.46 | 19.81 | 20.42 | 21.55 | | | | |

# EXHIBIT A

## Teamsters 287 Wages

| POSITION | | 8/16/2017 | | 8/16/2018 | | 8/16/2019 | | 8/16/2020 | | 8/16/2021 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | $1.13 | | $0.90* | | $0.90* | | $0.90* | | $0.90* |
| | | | | | | | | | | |
| Picker-Sorter-Cleaner | | $18.01 | | | | | | | | |
| | | | | | | | | | | |
| Laborer | | $21.48 | | | | | | | | |
| | | | | | | | | | | |
| Shear Person | | $21.65 | | | | | | | | |
| Burner | | $21.65 | | | | | | | | |
| Metal Sorter | | $21.65 | | | | | | | | |
| Scale Helper | | $21.65 | | | | | | | | |
| Lift Truck Driver | | $21.65 | | | | | | | | |
| Metal Cleaner | | $21.65 | | | | | | | | |
| Non-Ferrous Baler Operator | | $21.65 | | | | | | | | |
| | | | | | | | | | | |
| Storekeeper | | $21.84 | | | | | | | | |
| Tin Press Operator | | $21.84 | | | | | | | | |
| Sheer Operator-Guillotine | | $21.84 | | | | | | | | |
| Car Flattener Operator | | $21.84 | | | | | | | | |
| Plasma Torch Person | | $21.84 | | | | | | | | |
| | | | | | | | | | | |
| Truck Driver | | $22.00 | | | | | | | | |
| Maintenance Repair Person | | $22.17 | | | | | | | | |
| Welder | | $22.17 | | | | | | | | |
| Crane Operator | | $22.17 | | | | | | | | |
| | | | | | | | | | | |
| Sub-Foreperson | | $22.26 | | | | | | | | |
| Sims Inter-Company Transit | | $22.30 | | | | | | | | |

* The Union reserves the right to allocate the above increases to Health & Welfare or
Pension with written notice to the Company.

## Notes to Exhibit "A" and "A-1"

1. Employees hired on or after August 16, 2017, shall be compensated pursuant to Exhibit A-1, without regard to the work assigned or any classification awarded the employee under this Agreement. However, no employee shall have his or her regular wage rate (before the application of shift premiums) as of August 15, 2017, reduced by application of Exhibits "A" or "A-1".

2. The Union must notify the employer in writing if it wishes any wage increase provided by this Agreement to be allocated to the Pension and/or Health and Welfare Trusts. Such notification must precede the effective date of the wage increase. The wage rates shown on these tables do not reflect the pension and health and welfare allocations set forth I Section XXIII and Exhibit A of the Agreement

3. An employee who operates equipment at or above a 977 CAT or equivalent shall be compensated at the Crane Operator rate for all hours spent operating such equipment.

4. Employees hired on or before August 15, 2017 shall be compensated as per Exhibit "A" attached, and any adjustments to rate of pay shall become effective as of August 16, 2001. No employee that is hired on or before August 15, 2017 shall have his or her regular wage rate (before the application of shift premiums) reduced by the application of Exhibit "A".

**Appendix A**

**ADDICTION RECOVERY
AND SUBSTANCE ABUSE POLICY**

I.        ADDICTION RECOVERY PROGRAM (ARP)

A.        The Employer and the Union are committed to providing a safe and productive work environment for Employees. The Employer and the Union recognize the valuable resource we have in our Employees and recognize that the state of an Employee's health affects attitude, effort and job performance. Substance abuse causes decreased efficiency and greatly increased risk of injury to Employees. The Employer and the Union therefore adopt this policy on behalf of each of its Employees. The intent of the policy is threefold:

1.        To maintain a safe, drug and alcohol free workplace.

2.        To maintain our work force at its maximum effectiveness.

3.        To provide confidential Addiction Recovery Program (ARP) referral and treatment to those Employees who recognize they have a substance abuse problem and voluntarily seek treatment for it.

B.        In order to achieve these purposes, it is our primary goal to identify those Employees and refer them to professional counsel, before job performance has become a disciplinary problem. Employees are urged to use the services available through an Addiction Recovery Program (ARP). Employees who voluntarily seek help through an ARP will not jeopardize their job security by such self-identification.

1.        If you believe you have a substance abuse problem, directly contact an ARP. All information will be kept confidential and you will be referred to professional counselors and advised how to utilize your Addiction Recovery Program for appropriate treatment.

2.        Treatment for alcoholism or drug dependency is provided under applicable Health and Welfare plans, up to the limits described in the plans.

3.        An Employee shall be granted necessary leave of absence for treatment of drug/alcohol problems contingent upon signing a "Referral Agreement" requiring completion of an approved treatment program.

II.        WORK RULES

A.        All Employees must report to work in a physical condition that will enable them to perform their jobs in a safe and efficient manner. Employees shall not:

1.        Use, possess, dispense or receive alcohol, intoxicants or controlled substances (drugs) on or at the jobsite.

2.     Report to work with any measurable amount of a controlled substance, intoxicant or illegal drug in their system.

B.     Medication prescribed by a physician is an exception when the physician prescribing medication has released the Employee to work while taking the prescribed medication. However, abuse of prescribed drugs is a violation of this policy.

C.     Employees who violate the above work rules shall be subject to appropriate discipline up to and including discharge. However, it is the primary intent for most infractions to encourage and assist Employees in treatment and rehabilitation through an Addiction Recovery Program, as is outlined in this policy.

III.     TESTING

A.     Substance abuse is a disease which is treatable and with the object of this policy being rehabilitation and not termination, although termination may at times be necessary as otherwise provided in this policy.

B.     An Employee whose work performance and/or behavioral conduct indicates that he/she is not in a physical condition that would permit the Employee to perform a job safely and efficiently will be subject to submitting to a urine, blood or breathalyzer test to determine the presence of alcohol or drugs in the body. Provided:

1.     The Employer has reasonable grounds to believe that the Employee is under the influence of or impaired by alcohol or drugs. Reasonable grounds include abnormal coordination, appearance, behavior, speech or odor. It can also include work performance, safety and attendance problems.

2.     The supervisor's reasonable grounds must be confirmed by another management representative in conjunction with a representative of the Union, which may be the Business Representative, Job Steward or Union Safety Representative if immediately available.

3.     The Employee will be provided with an opportunity to explain his/her conduct at the time of confirmation to the Representatives, including the Union Representative, set forth in 2 above.

C.     Employees who are directly or indirectly involved in an accident or industrial injury which requires medical care are subject to submitting to a blood, urine or breathalyzer test, if reasonable cause exists. The innocent victims of an accident will not be subject to a test unless reasonable cause exists.

D.     Employees required to take a test will be placed on an unpaid leave of absence pending receipt of the test results.

E.      Failure to submit to a test, if the employee's action or appearance, such as an accident or obvious physical actions indicate substance abuse give legitimate cause to request a drug test (which can be refused by an employee), creates a negative inference against the employee. It is understood, however, that the Company action, if it terminates the employee, are subject to the grievance procedures. If the Employee voluntarily consents to obtaining assistance through an Addiction Recovery Program and immediately enters into a written Referral Agreement, the test may be waived upon agreement by the Employer.

F.      The Employer shall select reputable facilities for base testing and confirmatory testing at Employer expense. The facility for confirmatory testing must meet all standards required by law and/or set by State or Federal Health Agencies for laboratory performance, and they must employ certified Medical Toxicologists and Technicians. The Union will be provided with the testing facilities' names, addresses and credentials if requested. The Union retains the right to demand another test, a change in test procedure, or test facility based on reliable information which disproves the accuracy or quality of either. The Union also retains the right to request a change in test procedure or test facility when a reasonable and superior alternative to either is available.

G.      The Union will have the opportunity to review the testing procedure.

H.      All samples which test positive will be confirmed using a gas chromatography/mass spectrometry test or a superior or equally reliable test if same becomes reasonably available.

I.      None of the testing procedures are intended to be in violation of the law, but if they are, they shall be eliminated without voiding other parts of this policy.

IV.     REFERRAL AGREEMENT

A.      It is the intent of the Employer and the Local Union to correct problems associated with drug and alcohol through an ARP rather than to initially penalize Employees. Therefore, an Employee who voluntarily enters an ARP or has a positive result on a test may have disciplinary action withheld pending satisfactory completion of the Referral Agreement requirements.

B.      The terms of the disciplinary action will be set forth in a written Referral Agreement entered into between the Employee, the Union, ARP and the Employer. When reviewing the written agreement, the disciplinary action will be abated for an Employee who satisfactorily completes the treatment program prescribed by an ARP counselor and who meets the terms and conditions of the written Referral Agreement.

C.      An Employee who fails to cooperate, abandons or does not complete the treatment program prescribed by an ARP counselor or who fails to live up to the terms and conditions of the Referral Agreement will receive the previously withheld discipline. However, before the disciplinary action is imposed, the Employer and the Union representative will attempt to counsel the Employee into completing the treatment program.

D.     Whether an Employee volunteers to participate in an ARP or is required to participate as a condition of continued employment, that Employee shall continue to be subject to the same rules, working conditions and disciplinary procedures in effect for other Employees; i.e., Employees cannot escape discipline for future infractions by being enrolled in an ARP.

E.     In order to ensure confidentiality in an ARP, the Employer shall designate a Management Employee as the Employee Assistance Representative for the Company.  This individual shall be the sole representative of the Company who is in possession of the Employee ARP information.

F.     Whenever Owner or Awarding Agency specifications require the Employer to provide a drug-free workplace, such additional requirements may be incorporated herein upon mutual agreement of the Union and the Employer.

Dated: August 16, 1996 *

**SIMSMETAL USA CORPORATION**

By _____

By _____

**FREIGHT, CONSTRUCTION, GENERAL DRIVERS, WAREHOUSEMEN AND HELPERS LOCAL NO. 287, I.B.T.**

By _____

By _____

**TEAMSTERS LOCAL NO. 853, I.B.T.**

By _____

By _____