UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAEA SANFT,<br><br>        Plaintiff,<br><br>    v.<br><br>SIMS GROUP USA CORPORATION,<br><br>        Defendant. | Case No. 19-cv-08154-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND APPROVAL OF NOTICE**<br><br>Re: ECF No. 33 |

Before the Court is Plaintiff's motion for conditional certification of a collective and approval of court-supervised notice under the Fair Labor Standards Act ("FLSA"). ECF No. 33. The Court will grant the motion in part and deny it in part.

**I.    BACKGROUND**

Plaintiff Paea Sanft, a former employee of Defendant Sims Group USA Corporation, seeks to represent a collective class of Sims Group employees and former employees in this FLSA action. ECF No. 33 at 13. His first amended complaint ("FAC"), ECF No. 24, alleges five causes of action including an FLSA claim asserting that Sims Group required employees to work more than 40 hours per week and failed to pay the mandatory overtime rate for those overtime hours, in violation of 29 U.S.C. §§ 206 *et. seq.*[1] FAC ¶ 77.

Sanft worked for Sims Group, a global metal recycler, from June 1999 through September 2019, and held several different roles including Labor, Maintenance, Lead Shift, Heavy Equipment Operator, and Equipment Operator. *Id.* ¶¶ 7-8. During his employment, Sanft alleges

---

[1] The remaining claims are failure to provide meal periods, in violation of California Labor Code §§ 226.7 and 512; failure to provide rest periods, in violation of California Labor Code §§ 226.7 and 512; failure to provide accurate itemized wage statements, in violation of Labor Code § 226; and violation of California Business & Professions Code § 17200.

1  that he and other collective members "frequently worked well over eight (8) hours in a day and
2  forty (40) hours in a week," *id.* ¶ 27, and Sims Group "compensated [them] with shift differentials
3  but failed to include the shift differentials into the regular rate of pay over overtime calculations
4  purposes," *id.* ¶ 31.

5      Sanft filed his original complaint in San Mateo Superior Court on October 31, 2019, ECF
6  No. 1-2, and Sims Group subsequently removed the action to federal court, ECF No. 1. Sanft filed
7  the FAC on April 3, 2020, ECF No. 24, which Sims Group answered on April 17, 2020, ECF No.
8  27.

9      On August 7, 2020, Sanft filed the present motion seeking the Court's conditional
10  certification of his proposed FLSA collective and approval of his proposed notice to opt-in
11  plaintiffs. ECF No. 33. Sims Group filed an opposition, ECF No 37, and Sanft replied, ECF No.
12  39. The Court heard argument on September 16, 2020. ECF No. 41.

13  **II.    JURISDICTION**
14      This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

15  **III.   LEGAL STANDARD**
16      The Fair Labor Standards Act provides that actions against employers for violation of its
17  overtime requirements may be brought "in any Federal or State court of competent jurisdiction by
18  any one or more employees for and in behalf of himself or themselves and other employees
19  similarly situated." 29 U.S.C. § 216(b). A suit brought on behalf of other employees is known as
20  a "collective action," a type of suit that is "fundamentally different" from a class action. *Genesis*
21  *Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) (citing *Hoffmann-La Roche Inc. v. Sperling*,
22  493 U.S. 165, 177-78 (1989) (Scalia, J. dissenting)). For example, unlike in class actions,
23  members of a collective action must "affirmatively opt in to the joint litigation, in writing."
24  *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018) (citing 29 U.S.C. § 216(b)).
25  Collective actions allow aggrieved employees "the advantage of lower individual costs to
26  vindicate rights by the pooling of resources." *Hoffman-LaRoche*, 493 U.S. at 170.

27      Certification requires a showing that the potential class members are "similarly situated."
28  *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009) (citation omitted). A

1  majority of courts, including district courts in this circuit, follow a two-step process for
2  determining whether a class is "similarly situated." *See Harris v. Vector Mktg. Corp.*, 753 F.
3  Supp. 2d 996, 1003 (N.D. Cal. 2010); *Lewis*, 669 F. Supp. 2d at 1127. In the first stage,
4  alternatively called "the notice stage" or "conditional certification," the court considers whether
5  the plaintiff has submitted sufficient evidence to justify the conditional certification of the class
6  and the sending of notice of the action to potential class members. *Lewis*, 669 F. Supp. 2d at
7  1127. "At the notice stage it is the plaintiffs' burden to make substantial allegations that the
8  putative collective members were subject to an illegal policy, plan or decision, by showing that
9  there is some factual basis beyond 'mere averments' in the complaint." *Dalchau v. Fastaff, LLC*,
10 No. 17-cv-01584-WHO, 2018 WL 452112, at *1 (N.D. Cal. Jan. 17, 2018) (citation omitted).
11 Such a showing is generally "supported by declarations or discovery, that the putative class
12 members were together the victims of a single decision, policy, or plan." *Lewis*, 669 F. Supp. 2d
13 at 1127 (quotation marks and citation omitted).

14  Only after notice is sent and discovery has closed do district courts move to the second
15 step, in which the court reevaluates the collective action under a stricter standard, usually
16 prompted by a defendant's motion for decertification. *Rivera v. Saul Chevrolet, Inc.*, No. 16-cv-
17 05966-LHK, 2017 WL 5000796, at *4 (N.D. Cal. Nov. 2, 2017). This second determination
18 involves several factors, including "the disparate factual and employment settings of the individual
19 plaintiffs, the various defenses available to the defendant with respect to each plaintiff, fairness
20 and procedural considerations, and whether the plaintiffs made any required filings before
21 instituting suit." *Bakhtiar v. Info. Res., Inc.*, No. 17-cv-04559-JST, 2018 WL 3585057, at *1
22 (N.D. Cal. Jul. 26, 2018) (citation omitted).

23 **IV.    DISCUSSION**

24  Sanft asks the Court for an order (1) granting conditional certification of the proposed
25 FLSA collective under 28 U.S.C. § 216(b), (2) requiring Sims Group to produce names, job titles,
26 addresses, telephone numbers, e-mail addresses, dates and location of employment, and dates of
27 birth of all known collective members, and (3) approving the proposed notice and notice plan to
28 communicate with proposed collective members prior to and during sixty-day opt-in period. ECF

3

No. 33 at 13-14.

### A. Conditional Certification

In his declaration, Sanft alleges that "[p]ursuant to Defendant's compensation policies," former and current hourly employees "are not paid overtime premiums inclusive of shift differentials in the regular rate calculation," and, accordingly, "Defendant maintains a common plan and policy pursuant to which they fail to pay [these] employees for overtime premiums, as required by the FLSA." ECF No. 33-1 at 3; *see also* ECF No. 33 at 21 ("Regardless of the title or duties of the hourly employee, Defendant failed to include shift differentials in [its] overtime calculations."); FAC ¶ 31 ("Plaintiff is informed and believes, and thereon alleges that, during the relevant time frame, Defendant also compensated Plaintiffs and the Class Members with shift differentials but failed to incorporate the shift differentials into the regular rate of pay for overtime calculation purposes and therefore were provided inaccurate overtime pay.").

Based on these allegations, Sanft moves to conditionally certify the following putative collective action:

> All individuals who are or previously were employed by Defendant on an hourly basis, were in the employee union, and worked over forty hours in a week at any time during the period beginning October 31, 2016 to the date the order granting this motion is entered.

ECF No. 33 at 13. As evidence, Sanft submits a declaration stating that, in his various positions with Sims Group over the course of his tenure with the company, he "routinely worked 40 or more hours per week," but that "Defendant failed to include shift differentials in the calculation of [his] overtime premium rate." ECF No. 33-1 at 2-3. His declaration further states that based on "multiple conversations with [other] hourly employees about Defendant's compensation policies," he "confirmed [that] the Defendant failed to include the shift differentials in other hourly employees' overtime premiums." *Id.* at 3. The second and final piece of evidence offered by Sanft in support of his certification motion is a copy of his paystub for the pay period of May 13 – May 19, 2019. ECF No. 33-2. Sanft points to the paystub as evidence that "Defendant failed to include shift differentials in [its] overtime calculations." ECF No. 33 at 21. Sanft does not provide any evidence that Defendant failed to include other forms of remuneration in its

4

calculation of overtime pay rates.

Sims Group opposes the conditional certification of the putative collective insofar as Sanft seeks to include individuals who "did not work more than 40 hours in a week during the pay period in which they also earned shift differential pay." ECF No. 37 at 8. Sims Group further argues that the collective should be limited temporally, such that the "look-back period runs from the date of the Court's decision on the [conditional certification] motion." *Id.* at 9. Lastly, although it provides no basis for the request, Sims Group makes several references in its opposition seeking to limit the proposed collective to only "members of plaintiff's union," specifically Teamsters Local No. 853. *Id.*; ECF No. 38 at 4.

The Court agrees with Sims Group that the evidence does not support the broad collective Sanft proposes. Sanft's complaint, motion, and declaration "challenge[] Defendant's company-wide policy and practice of failing to include *shift differential payments* in hourly workers' regular rate calculation." ECF No. 33 at 13 (emphasis added). Sanft makes no allegation, however, that Sims Group's overtime calculations improperly excluded any *other* element of remuneration. This means that current and former Sims Group employees who worked overtime but earned no shift differential payments were not subject to the alleged violative policy. *See Hernandez v. Sephora USA*, No. 16-cv-05392-WHO, 2017 WL 6209308, at *4 (N.D. Cal. Dec. 8, 2017) (explaining that plaintiffs could not show they were "similarly situated" to a subset of the proposed collective because they provided no evidence that such persons "were subject to the common policy"). Sanft's proposed collective – Sims Group employees who merely "worked over forty hours in a week" – fails to capture this distinction.

In his reply, Sanft states, for the first time, that "the theory that binds all members of the collective is that Defendant failed to include *all remuneration* in the calculation of its employees' regular hourly rate for purposes of determining their overtime pay rate." ECF No. 39 at 4 (emphasis added). The Court generally does not consider arguments made for the first time on reply. *See, e.g., Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809, 834 (N.D. Cal. 2019). The argument also fails on the merits. As explained above, the only example in the record of "remuneration" that Sims Group "failed to include" in its overtime rate is shift differential pay. A

5

proposed collective that extends beyond that would sweep too broadly. *C.f. Dalchau*, 2018 WL 452112, at *4 ("The allegations found in plaintiffs' complaint . . . unambiguously base the theory of liability on the exclusion of the housing benefit's value from the overtime pay rate."). Accordingly, the Court will conditionally certify a collective comprised of employees and former employees who worked more than 40 hours in a week and earned shift differential pay during the same pay period.

Finally, the Court briefly addresses two remaining certification issues prompted by Sims Group's opposition. First, as to the temporal scope of Sanft's proposed collective action, in his reply Sanft agrees to adjust the look-back period to reference the date of conditional certification. ECF No. 39 at 2. The Court will make this adjustment.[2] Sims Group's remaining objection – that the collective should be limited to members of Sanft's union – is unsupported by logic or authority. There is no suggestion in the record that Sims Group's policies depended on an employee's union membership, and Sims Group offers no other basis for such a condition.[3] Sims Group's request on this point is denied.

//

//

//

---

[2] The FLSA provides that an action for unpaid overtime compensation "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Sanft's FAC alleges a willful violation. FAC ¶ 79. "Due to the relative lack of discovery and the lenient standard for conditional class certification, the Court will apply the three-year period to the notice." *Smith v. Akal Sec. Inc.*, No. CV-18-01117-PHX-SMB, 2019 WL 1932117, at *4 (D. Ariz. May 1, 2019); *see also Hobbs v. Cable Mktg. & Installation of La., Inc.*, 290 F. Supp. 3d 589, 597 n.6 (E.D. La. 2018) (holding that "a three year look back is appropriate at the conditional certification stage because the ultimate duration of the statute of limitations turns on a willfulness determination that is inappropriate to make without a more developed record"). This determination does not constitute a finding of willfulness. "Should Defendant file a decertification motion in the future, the Court will then, in light of evidence produced during discovery, reassess whether the two or three-year statute of limitations should apply to Plaintiffs' claims." *Smith*, 2019 WL 1932117 at *4. Defendant agrees that a three-year lookback period is appropriate at this stage. ECF No. 37 at 9.

[3] For the same reasons, the Court has stricken the phrase "in the employee union" from Plaintiff's proposed collective definition. Union members may enjoy the additional protections of a collective bargaining agreement, but all of Defendant's employees are entitled to the protection of the FLSA regardless of their union status.

6

Thus, the Court now conditionally certifies the following collective:

> All individuals who are or previously were employed by Defendant on an hourly basis, and who worked over forty hours in the same week that they earned shift differential pay, at any time during the period beginning January 19, 2018 to the date of this order.

Plaintiff is ordered to file a stipulated revised form of notice within 14 days reflecting this order.

### B.  Production of Collective Member Information

Upon certification, Sanft requests that the Court order Sims Group to "identify all potential opt-in plaintiffs," and provide each person's name, job title, address, telephone number, email address, dates of employment, location of employment, and date of birth. ECF No. 33 at 28. Sims Group contends that this is "personal and highly sensitive information" and requests that the Court require the production only of collective members' names and residential mailing addresses. ECF No. 37 at 10.

District courts in this circuit typically require the production of collective members' names, last known mailing addresses, email addresses, and telephone numbers. *See, e.g., Hunter v. Legacy Health*, No. 3:18-cv-02219-AC, 2021 WL 24553, at *9 (D. Or. Jan. 4, 2021); *Gonzalez v. Diamond Resorts Int'l Mktg., Inc.*, No. 2:18-cv-00979-APG-NJK, 2020 WL 2114353, at *1 (D. Nev. May 1, 2020); *Amaraut v. Sprint/United Mgmt. Co.*, No. 19-cv-411-WQH-MDD, 2019 WL 5696685, at *3 (S.D. Cal. Nov. 4, 2019); *Cuevas v. ConAm Mgmt. Corp.*, No. 18cv1189-GPC(LL), 2019 WL 5320544, at *6 (S.D. Cal. Oct. 21, 2019) (collecting cases); *Morfin-Arias v. Knowles*, No. 16-cv-06114-BLF, 2018 WL 1710369, at *9 (N.D. Cal. Apr. 9, 2018). Sims Group is ordered to produce this information regarding collective members within 14 days.[4] The Court agrees with Sims Group, however, that the production of the other information Plaintiff seeks would violate collective members' privacy rights and is unnecessary for the giving of notice. *See Morfin-Arias*, 2018 WL 1710369 at *9 (denying request for social security numbers of class

---

[4] To the extent Sims Group contends that the production of such information should occur pursuant to a protective order, ECF No. 37 at 11, the parties are ordered to file either a stipulated order or competing proposed orders within seven days of this order. *See* Paragraph G of Judge Tigar's Standing Order for All Civil Cases, available at https://www.cand.uscourts.gov/jst-civil-standing-order.

7

members "because [plaintiff] has not provided any reason why such information is necessary"); *Russell v. Swick Mining Servs. USA Inc.*, No. CV-16-02887-PHX-JJT, 2017 WL 1365081, at *5 (D. Ariz. Apr. 14, 2017) (seeing "no reason to demand such unnecessarily intrusive information to be produced" declining to "require Defendant to disclose such personal identifiers"). The balance of Plaintiff's requests for collective member information are therefore denied.

### C. Content and Manner of Notice

Sanft includes with his motion a proposed notice, reminder notice, and opt-in form to be used to communicate with other Sims Group employees and former employees about the collective action. ECF No. 33-3; ECF No. 33 at 27. Sims Group objects to Sanft's proposed notice on the grounds that it lacks "clarity and accuracy," includes "unnecessary information," and fails to "expressly notify employees that they have a right not to talk to attorneys for Plaintiff." ECF No. 37 at 11. Sims Group includes with its opposition "proposed revisions," but, with the exception of its request that the notice include a disclaimer about communications with Plaintiff's counsel, Sims Group offers these revisions without explanation. *Id.*

The Court declines to adopt Sims Group's proposed alterations with two exceptions. First, as Sanft acknowledges, ECF No. 39 at 8, the Court Division should be listed as "Oakland." *See* ECF No. 33-3 at 2, 5. Second, Sanft must revise the notice's description of the collective to adhere to the mandates of this order. *See id.* at 2, 3. The balance of Sims Group's requests are denied.

The Court has two additional corrections. First, the second paragraph of section 1 of the notice should be amended to read, "Please note that the Court has not ruled on the merits of the lawsuit. The Court has only ruled that it is important that you be notified of the existence of the lawsuit so that you can determine whether you wish to join it." Second, since the Court will approve a 60-day opt in period, the notice should also include the date by which its recipients must respond. *See Bakhtiar*, 2018 WL 3585057, at *5.

As to form of notice, Sanft seeks the Court's approval of communication to the putative collective class by way of (1) mailing and emailing proposed notice, (2) text message at the onset of the opt-in period, and (3) reminder notice by email 40 days into the proposed 60-day opt-in

8

1   period. ECF No. 33 at 13. Sims Group does not contest the 60-day opt in period, but does object
2   to email and text messages as forms of communication. ECF No. 37 at 10. Sims Group argues
3   that text messages and email are "more personal and private forms of communication than regular
4   mail," and worries that an electronically transmitted notice "can be altered or forwarded with
5   commentary that distorts the Court's approved language." *Id.*

Courts in this district routinely approve email notice of conditional collective action certification, particularly in light of the "real risk" that potential members' addresses have changed. *Bakhtiar*, 2018 WL 3585057, at *3 (collecting cases). The Court will authorize email communications here as well.

Sanft states that text message communication to potential opt-in plaintiffs is validated by the "importance and urgency of providing notice." ECF No. 33 at 26. Sanft argues that mail can be "unreliable," while email and text communications are contact options which "travel with the individual, even after they relocate." ECF No. 39 at 9. Sims opposes text message notice for the same reasons it opposes email notice. ECF No. 37 at 10.

"District courts across the country are split as to whether a plaintiff should be permitted to send notice to potential class members in FLSA actions by text message in addition to other more traditional notice methods." *Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670, 671 (S.D. Tex. 2020) (citing Caley DeGroote, *Can You Hear Me Now? The Reasonableness of Sending Notice Through Text Messages and Its Potential Impact on Impoverished Communities*, 23 Wash. & Lee J. Civil Rts. & Soc. Just. 279, 297-98 (2016)). Increasingly, courts recognize that "notice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved." *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017); *Dickensheets*, 440 F. Supp. 3d at 672 (authorizing text message notice); *Yates v. Checkers Drive-In Rests., Inc.*, No. 17 C 9219, 2020 WL 6447196, at *3 (N.D. Ill. Nov. 3, 2020) (authorizing text message notice). The Court agrees with the reasoning of these latter cases and authorizes text message notice in this case. Plaintiff's proposed notice plan, therefore, is approved.

9

**CONCLUSION**

Sanft's motion for conditional certification of the putative FLSA collective action is granted in part and denied in part. Within 14 days, Sanft shall file a revised proposed notice to putative collective members which correctly identifies the collective and incorporates all other corrections consistent with this order. Sanft may give notice to potential collective members once the Court has approved the form of notice. Sims Group is ordered to provide Sanft with the name, mailing address, email address, and mobile telephone number of potential collective members as set forth above.

**IT IS SO ORDERED.**

Dated: January 19, 2021



JON S. TIGAR
United States District Judge