UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAEA SANFT,

                Plaintiff,

    v.

SIMS GROUP USA CORPORATION,

                Defendant.

Case No. 19-cv-08154-JST

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEY'S FEES AND COSTS; SERVICE AWARDS; AND ADMINISTRATION COSTS**

Re: ECF No. 89

Before the Court is Plaintiffs Paea Sanft and Sergio Bernal-Rodriguez's unopposed motion for final approval of class action settlement, service awards, and administration costs. ECF No. 89. Class Counsel Sommers Schwartz, P.C. and James Hawkins APLC also seek attorney's fees and costs. *Id.* The Court previously granted a motion for preliminary approval. ECF No. 84. No class member has objected to the settlement, and one class member excluded themselves from the settlement. ECF No. 89-7 at 4 ¶¶ 11–12. The Court will grant the motions in part and deny them in part.

## I.       BACKGROUND

### A.       Factual and Procedural Background

Sanft filed this Fair Labor Standards Act ("FLSA") collective and wage-and-hour class action complaint on behalf of employees and former employees of Defendant Sims Group USA Corporation. ECF No. 24 ¶ 11. Sanft worked for Sims Group, a global metal recycler, from June 1999 through September 2019, and held several different roles, including Labor, Maintenance, Lead Shift, Heavy Equipment Operator, and Equipment Operator. *Id.* ¶¶ 7–8. Sanft alleges that Sims Group provided "inaccurate overtime pay," *id.* ¶ 31; failed to provide "lawful meal

period[s]," *id.* ¶ 32; did not permit its employees to take their lawful "paid . . . rest period," *id.* ¶ 39; and failed to "provide accurate, lawful itemized wage statements . . . in part because of the above specified violations," *id.* ¶ 42.

Sanft filed his original complaint in San Mateo Superior Court on October 31, 2019, and Sims Group subsequently removed the action to federal court. ECF No. 1 ¶¶ 1–2. On March 27, 2020, Bernal-Rodriguez filed a separate putative class action against Sims Group in the Northern District of California. ECF No. 89-3 ¶ 6. In July 2020, Bernal-Rodriguez's action was dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A). *Id.* ¶ 9. Further, in 2020, Sanft and Bernal-Rodriguez each filed Private Attorneys General Act ("PAGA") representative actions in San Mateo Superior Court, and in April 2021, they filed a consolidated PAGA representative action. *Id.* ¶¶ 5, 8, 11.

Sanft filed the operative first amended complaint ("FAC") on April 3, 2020, ECF No. 24, which Sims Group answered on April 17, 2020, ECF No. 27. The FAC asserts the following causes of action: (1) failure to provide meal periods or compensation pursuant to the California Labor Code; (2) failure to provide rest periods or compensation pursuant to the California Labor Code; (3) failure to provide accurate itemized wage statements pursuant to the California Labor Code; (4) violations of California's Unfair Competition Law ("UCL"); and (5) failure to pay overtime pursuant to the Fair Labor Standards Act. ECF No. 24 ¶¶ 46–80. Bernal-Rodriguez is not a named Plaintiff in the FAC because "his paystubs demonstrated he could only maintain a state law overtime claim, not a FLSA overtime claim." ECF No. 89-1 at 8.

The parties conducted discovery, which included "exchange of information and documents" regarding "relevant policies on timekeeping, pay schemes, meal and rest periods, job descriptions and duties, Plaintiffs' time and payroll records, time and pay records for a sampled group of the putative Class Members," as well as a 30(b)(6) deposition and written discovery. ECF No. 89-3 ¶¶ 14, 18. On March 3, 2020, the parties participated in a mediation session, but the case did not settle at that time. *Id.* ¶ 18. On August 7, 2020, Sanft filed a motion seeking the Court's conditional certification of his proposed FLSA collective and approval of his proposed notice to opt-in plaintiffs, ECF No. 33, which the Court granted in part and denied in part, ECF

United States District Court
Northern District of California

1   No. 49.  The parties' settlement discussions resumed after the Court issued its conditional

2   certification order.  ECF No. 89-3 ¶ 18.

3        On February 25, 2022, Plaintiffs filed an unopposed motion for preliminary approval,

4   approval of class notice, and setting final approval hearing.  ECF No. 78.  The Court granted the

5   motion on September 2, 2022.  ECF No. 84.  On March 9, 2023, Plaintiffs filed an unopposed

6   motion for final approval of class action settlement, attorney's fees and costs, service awards, and

7   administration costs.  ECF No. 89.

8        The Court held a fairness hearing on April 27, 2023.  ECF No. 90.  After the hearing, the

9   Court concluded that it needed further information to resolve the motion for final approval,

10   attorney's fees and costs, services awards, and administration costs.  *See* ECF No. 91 at 1.  The

11   Court therefore ordered supplemental briefing to address the factors outlined in *In re Bluetooth*

12   *Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011), *id.* at 1–2, and to provide "a

13   summary of hours expended on major tasks necessary to this action," *id.* at 3.

14   **B.     Terms of the Settlement**

15        The proposed settlement agreement ("Settlement") resolves the claims between Sims

16   Group and Plaintiffs and the settlement class, defined as follows:

17   a. FLSA OVERTIME COLLECTIVE: All of [Sims Group's] past
18   and present non-exempt California employees who worked more
     than 40 hours in a week and earned shift differential pay during the
     same pay period during the period January 19, 2018 – January 19,
19   2021;

20   b. MEAL AND REST PERIOD CLASS: All of [Sims Group's] past
     and present non-exempt California employees who worked for
21   [Sims Group] from October 31, 2015 through the date the Court
     grants Preliminary Approval, or 7.5 months (225 days) from the date
22   Plaintiffs file their Motion for Preliminary Approval, whichever
     occurs first; and
23

24   c. WAGE STATEMENT CLASS: All of [Sim Group's] past and
     present non-exempt California employees who worked for [Sims
25   Group] from October 31, 2018, through the date the Court grants
     Preliminary Approval, or 7.5 months (225 days) from the date
26   Plaintiffs file their Motion for Preliminary Approval, whichever
     occurs first.

27   ECF No. 89-4 ¶ 1.3.  The class excludes "individuals that previously executed a general release of

28   claims against [Sims Group], and have not worked for [Sims Group] since they executed such

3

release." *Id.*

Under the settlement, Sims Group agrees to pay $157,500 ("Settlement Amount") as well as its share of any payroll taxes on individual settlement payments. *Id.* ¶ 1.19.  The Settlement Amount includes the individual payments to participating class members, the statutory PAGA payment, service awards to the class representatives, attorney's fees and costs, and administration costs.  *Id.*  The parties agree to seek approval for a payment of $10,000 to resolve Plaintiffs' PAGA claims, 75% of which ($7,500) shall be paid to the State of California Labor and Workforce Development Agency, with the remainder ($2,500) distributed to class members. *Id.* ¶ 7.1.  Plaintiffs will submit requests for service awards in an amount not to exceed $5,000 each.  *Id.* ¶ 10.1.  Plaintiffs also will seek attorney's fees in an amount not to exceed $60,000, *id.* ¶ 11.1, and will seek approval of actual and reasonable litigation and administration costs, *id.* ¶¶ 11.2, 16.7.  No portion of the Settlement Amount shall revert to Defendants.  *Id.* ¶¶ 10.1, 11.1–11.2; ECF No. 89-3 ¶ 28.

After the above deductions, Plaintiffs estimate that the net settlement to be distributed to class members is $48,210.71.  ECF No. 89-3 ¶ 21.  Each class member's payment will be calculated on a pro rata basis "based on the number of weeks worked during the Class Period." ECF No. 89-4 ¶ 9.1.1.  After removal of the one individual who submitted requests for exclusion, there are 528 class members who will receive individual settlement payments ranging from approximately $0.32 to $690.25.  ECF No. 89-7 ¶¶ 13–14.  The average net payment to class members is $91.31.  *Id.* at ¶ 14.  "Any funds remaining uncashed after 180 days shall be sent to the California State Controller's Office in the name of the Class Member to whom the uncashed settlement payment was addressed."  ECF No. 89-4 ¶ 8.3.

In exchange, class members will release the following claims against Sims Group:

> Any and all claims that accrued during the Class Period for the payment of unpaid wages, including but not limited to, overtime wages, "off-the-clock" wages, and compensation associated with non-compliant meal or rest periods, penalties (including, without limitation penalties for alleged violations of the Fair Labor Standards Act ("FLSA"), and California Labor Code sections 201, 202, 203, 204, 226, 226.7, 510, 512, 558, 1194 and 2698, *et seq.*), interest, costs, attorneys' fees, restitution, unjust enrichment, compensatory damages, liquidated damages, injunctive relief, and

> any other remedies available at law or equity for wages allegedly
> owed to Plaintiff and with respect to the Class Members only to the
> extent that such claims were asserted or could have been asserted in
> the Litigation based upon the facts alleged in the First Amended
> Complaint ("FAC").

*Id.* ¶ 5.1(a).  In addition, Plaintiffs Sanft and Bernal-Rodriguez have agreed to a general release,

meaning that those Plaintiffs release claims both known and unknown.  *Id.* ¶ 5.1(b).

## II.      FINAL APPROVAL OF SETTLEMENT

### A.      Legal Standard

"The claims, issues, or defenses of a certified class . . . may be settled, voluntarily

dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  "Adequate

notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler

Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc.

v. Dukes*, 564 U.S. 338 (2011).  In addition, Rule 23(e) "requires the district court to determine

whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026

(citation omitted).  In making that determination, the district court must balance several factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense,
> complexity, and likely duration of further litigation; (3) the risk of
> maintaining class action status throughout the trial; (4) the amount
> offered in settlement; (5) the extent of discovery completed and the
> stage of the proceedings; (6) the experience and views of counsel;
> (7) the presence of a governmental participant; and (8) the reaction
> of the class members to the proposed settlement.[1]

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at

1026).[2]

Settlements that occur before formal class certification also "require a higher standard of

---

[1] There is no governmental participant in this case, so the Court does not consider the seventh factor.

[2] The 2018 amendments to Rule 23 require the district to court to consider a similar list of factors, including the adequacy of representation by class representatives and class counsel, whether the proposal was negotiated as arm's length, and the adequacy of the relief and equitable treatment of class members.  Fed. R. Civ. P. 23(e)(2).  These factors were "not designed 'to displace any factor [developed under existing circuits' precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'"  *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (internal quotation marks, alteration, and citation omitted).

### B.    CAFA Compliance

This action is subject to the requirements of the Class Action Fairness Act of 2005 ("CAFA") which requires that, within ten days of the filing of a proposed settlement, each defendant serve a notice containing certain required information upon the appropriate state and federal officials.  28 U.S.C § 1715(b).  CAFA also prohibits a court from granting final approval until 90 days have elapsed since notice was served under Section 1715(b).  *Id.* § 1715(d).  Sims Group mailed the CAFA notices over 90 days ago.  ECF No. 83.

### C.    Discussion

For the reasons that follow, the Court will grant final approval of the settlement.

#### 1.    Adequacy of Notice

A "court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal . . . ."  Fed. R. Civ. P. 23(e)(1)(B).  The parties must provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice . . . ."  *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).

The Court approved the parties' proposed notice plan when it granted preliminary approval.  ECF No. 84 ¶¶ 5–10.  Under the approved notice plan, Plaintiffs retained ILYM Group, Inc. as the claims administrator.  ECF No. 89-7 at ¶ 3.  "On October 3, 2022, the Notice Packet was mailed, via U.S First Class Mail, to all 529 individuals contained in the Class List."  *Id.* ¶ 7.  Of the 529 notice packages, thirty-five were returned by the post office as undeliverable as addressed.  *Id.* ¶ 8.  And of the returned packages, one was remailed as a result of a forwarding

address provided by the United States Postal Service, twenty-seven were remailed as a result of ILYM Group's skip tracing efforts, and seven remain undeliverable because no updated address could be found. *Id.* ¶¶ 9–10.

The deadline for class members to object to or opt out of the settlement was November 17, 2022. *Id.* ¶¶ 11–12. No class member has objected to the settlement, and one individual has opted out of the settlement. *Id.*

In light of the above procedures, which adhere to the previously approved notice plan, the Court finds that the parties have sufficiently provided notice to the settlement class members. *See Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at *7 (N.D. Cal. Feb. 16, 2016) (finding class notice adequate where the approved notice was sent in accordance with the approved notice plan, which was "consistent with the requirements of Rule 23 and due process . . .").

### 2.    Fairness, Adequacy, and Reasonableness

#### a.    Adequate Representation of the Class

The Ninth Circuit has explained that "adequacy of representation . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego*, 213 F.3d at 462 (citing *Hanlon*, 150 F.3d at 1020).

During the preliminary approval stage, the Court found no evidence of a conflict between the class and the representatives or counsel. ECF No. 84 ¶ 1. No contrary evidence has emerged, and no issues have been raised by class members. Similarly, the Court finds that Class Counsel are experienced in class action litigation and have vigorously prosecuted this action on behalf of the class. The Court concludes that this factor weighs in favor of approval.

#### b.    Strength of Plaintiff's Case and Risks of Litigation

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Difficulties and risks in litigating weigh in favor of approving a class

United States District Court
Northern District of California

1    settlement.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

2        Plaintiffs here face significant obstacles if the case were to proceed toward trial, as they

3    acknowledge.  ECF No. 89-3 ¶¶ 29–52.  Defendants continue to dispute liability and damages.  *Id.*

4    The Court finds that these acknowledged weaknesses weigh in favor of approving the settlement.

5    *See Moore v. Verizon Commc'ns Inc.*, C 09-1823 SBA, 2013 WL 4610764, at *5 (N.D. Cal. Aug.

6    28, 2013) (finding that the strength of plaintiff's case favored settlement because plaintiff admitted

7    that it would face hurdles in establishing class certification, liability, and damages).  Additionally,

8    "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for

9    years."  *Rodriguez*, 563 F.3d at 966.

### c.   Effectiveness of Distribution Method, Terms of Attorney's Fees, and Supplemental Agreements

12       The Court must consider "the effectiveness of [the] proposed method of distributing relief

13   to the class . . . ."  Fed. R. Civ. P. 23(e)(2)(C)(ii).  Under the Settlement, each class member will

14   receive a cash payment calculated based on the number of weeks worked by the class member

15   during the class period.  ECF No. 89-4 ¶¶ 9.1.1.  In the notice package, each class member

16   received information regarding the number of workweeks used to calculate their settlement share,

17   as well as instructions on how to dispute that information.  ECF No. 89-7 at 10.  If the final

18   settlement is approved, ILYM Group will issue payments based on these qualifying periods.  *Id.* at

19   4–5 ¶ 14.  This process was a proper and effective method for the calculation and confirmation of

20   the settlement distribution.

21       The Court has also evaluated in detail "the terms of [the] proposed award of attorney's

22   fees," Fed. R. Civ. P. 23(e)(2)(C)(iii), in connection with Class Counsel's motion for fees and

23   costs.  Although the Court has concerns regarding Plaintiffs' counsel's requested fee, as set forth

24   below, it has awarded a reduced fee, and the difference in amount will revert to the class.

25   Accordingly, the Court finds that this factor does not weigh against approval.

26       The only supplemental "agreement identified under Rule 23(e)(3)," Fed. R. Civ. P.

27   23(e)(C)(iv), permits Defendants to terminate the settlement if a certain percentage of the class

28   requests exclusion.  ECF No. 89-4 ¶ 6.4.  The existence of a termination option triggered by the

number of class members who opt out of the settlement[3] does not by itself render the settlement unfair.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015).  The Court previously reviewed the agreement and concluded that the termination provision is fair and reasonable.  *See* ECF No. 84.  The Court concludes that the agreement does not weigh against approval.

### d.    Equitable Treatment of Class Members

Consistent with Rule 23's instruction to consider whether "the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), the Court considers whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class," *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

The Settlement uses the same formula to calculate the settlement share for each class member, and, accordingly, treats all class members equally.  ECF No. 89-4 ¶ 9.1.1.  Accordingly, the Court finds that the Settlement treats class members equitably and that this factor supports approval.  *See Hefler*, 2018 WL 6619983, at *8; *see also In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. Jul. 22, 2019) (finding equitable to class members an allocation based on pro rata distribution).

### e.    Settlement Amount

Although not articulated as a separate factor in Rule 23(e), "[t]he relief that the settlement is expected to provide to class members is a central concern."  Fed. R. Civ. P. 23(e)(2)(C)–(D) advisory committee's note to 2018 amendment.  The Court therefore examines "the amount offered in settlement."  *Hanlon*, 150 F.3d at 1026.

To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware*, 484 F. Supp. 2d at 1080.  But "a cash settlement amounting to only a fraction of the potential recovery

---

[3] Such a provisions is sometimes referred to as a "blow provision."  *E.g.*, *Bakhtiar v. Info. Res., Inc.*, No. 17-CV-04559-JST, 2021 WL 4472606, at *4 (N.D. Cal. Feb. 10, 2021).

United States District Court
Northern District of California

1    will not per se render the settlement inadequate or unfair." *Officers for Just.*, 688 F.2d at 628.

2         Here, the $157,500 fund achieves a good result for the class.  Class Counsel calculates that

3    the settlement "offers the Class Members 37.5% of their maximum damages."  ECF No. 89-3

4    ¶ 27.  "It is well-settled law" that a cash settlement smaller than the potential recovery "does not

5    per se render the settlement inadequate or unfair."  *In re Omnivision Techs., Inc.,* 559 F.Supp.2d

6    1036, 1042 (N.D. Cal. 2008) (quoting *Officers for Just.*, 688 F.2d at 628).  In light of the

7    uncertainties described above, the Court finds the percentage of recovery fair and reasonable.  *See*

8    *Dyer v. Wells Fargo Bank, N.A.,* 303 F.R.D. 326, 331 (N.D. Cal. 2014) (holding that "[b]ecause of

9    the uncertainties attached to the litigation of these claims," a recovery of approximately one-third

10   of the potential value of class plaintiffs' claims was "fair and reasonable").

### f.    Extent of Discovery

12        "[I]n the context of class action settlements, formal discovery is not a necessary ticket to

13   the bargaining table where the parties have sufficient information to make an informed decision

14   about settlement."  *In re Mego*, 213 F.3d at 459 (quotation marks and citation omitted).  However,

15   a greater amount of completed discovery supports approval of a proposed settlement, especially

16   when litigation has "proceeded to a point at which both plaintiffs and defendants ha[ve] a clear

17   view of the strengths and weaknesses of their cases."  *Chun-Hoon*, 716 F. Supp. 2d at 852

18   (quotation marks and citation omitted).

19        Here, the parties conducted sufficient discovery to make an informed decision about the

20   adequacy of the settlement, having exchanged documents and written discovery and conducted a

21   30(b)(6) deposition.  ECF No. 89-3 ¶¶ 14, 18; *see also In re Omnivision Techs., Inc.*, 559 F.

22   Supp. 2d at 1042 (finding the parties were sufficiently informed about the case prior to settling because

23   they engaged in discovery, took depositions, briefed motions, and participated in mediation).  This

24   factor weighs in favor of approval.

### g.    Counsel's Experience

26   The Court also considers "the experience and views of counsel."  *Hanlon*, 150 F.3d at

27

28

United States District Court
Northern District of California

1026.  That counsel advocate in favor of this Settlement weighs in favor of its approval.[4]

### h.    Absence of Collusion and Arm's Length Negotiations

"Where . . . the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness . . . ," and the Court must examine the risk of collusion with "an even higher level of scrutiny for evidence of collusion or other conflicts of interest . . . ."  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (internal quotation marks omitted) (first quoting *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012); and then quoting *In re Bluetooth*, 654 F.3d at 946).  Signs of potential collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing agreement"; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund.  *In re Bluetooth*, 654 F.3d at 947.  If "multiple indicia of possible implicit collusion" are present, the Court has a "special 'obligat[ion] to assure itself that the fees awarded in the agreement [are] not unreasonably high.'"  *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

Here, the settlement implicates two of the three *Bluetooth* factors.  Class Counsel requests an attorney's fee that is 24% higher than the net settlement amount anticipated to be received by the entire class.  Also, the Settlement Agreement contains a "clear sailing" provision.  ECF No. 89-4 ¶¶ 11.1–11.2 (noting that Sims Group will not object to Class Counsel's motion for fees and costs).

However, "the *Bluetooth* factors are merely 'warning signs' that indicate the *potential* for collusion. . . . [T]he Court need not reject the settlement outright."  *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1007 (N.D. Cal. 2015) (emphasis in original) (quoting *In re Bluetooth,* 654 F.3d at 947).  In *Bluetooth*, the Ninth Circuit explained that a "disproportion between the fee award and the benefit obtained for the class" does not make a settlement "per se

---

[4] The Court considers this factor, as it must, but gives it little weight.  "[A]lthough a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement."  *Principles of the Law of Aggregate Litigation* § 3.05 cmt. a (Am. Law. Inst. 2010).

unreasonable." 654 F.3d at 945 (emphasis omitted); *see also Roes, 1–2*, 944 F.3d at 1060 (explaining that a "disproportionate attorneys' fee does not mean the settlement cannot still be fair, reasonable, or adequate"). When faced with a disproportionate fee, "the Court is merely obligated to 'assure itself that the fees awarded in the agreement were not unreasonably high' in light of the results obtained for class members." *In re TracFone*, 112 F. Supp. 3d at 1007 (quoting *In re Bluetooth*, 654 F.3d at 947).

As described in further detail below, the Court finds that Class Counsel's requested attorney's fee of 38% of the settlement fund is unreasonable and reduces the fee accordingly. That reduction by itself addresses any concern the Court has about the proportion of that fee to the class's recovery. Also, the difference between Plaintiffs' counsel's requested fee and the actual fee will be added to the settlement fund, thereby increasing the class's recovery. Accordingly, the Court finds that the presence of a disproportionate fee request and a clear sailing provision do not make the Settlement unfair, unreasonable, or inadequate.

### i.       Reaction of the Class

Finally, the Court considers the class's reaction to the settlement. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision*, 559 F. Supp. 2d at 1043 (quotation marks and citation omitted). Here, the reaction of the class was favorable. No class member objected to the settlement, and only one individual requested to be excluded from the class. ECF No. 89-7 ¶¶ 11–12. This factor therefore favors approval. *See Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

### 3.       Balance of Factors

All of the factors outlined in *Churchill Village* weigh in favor of final approval and a finding that the proposed settlement is fair, reasonable, and adequate. While the Settlement contains two of the *Bluetooth*'s "warning signs," "the settlement appears to present a good deal for class members when viewed as a whole." *In re TracFone*, 112 F. Supp. 3d at 1007.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.     ATTORNEY'S FEES

### A.     Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action . . . , courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941 (citation omitted). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to assess the reasonableness of the requested attorney's fee award. *Id.* at 942. "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.* The Ninth Circuit maintains a well-established "benchmark for an attorneys' fee award in a successful class action [of] twenty-five percent of the entire common fund."[5] *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (per curiam). Courts in the Ninth Circuit generally start with the 25% benchmark and adjust upward or downward depending on:

> the extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash settlement fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental*, 779 F.3d at 954–55 (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)). In addition, courts often crosscheck the amount of fees against the lodestar. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at

---

[5] Class Counsel argue that the Court should use 33% of the settlement fund as a benchmark because two district courts have done so when applying California law in diversity cases. ECF No. 89-1 at 22 (citing *Dennis v. Kellogg Co.*, No. 09-CV-1786-L WMC, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013); *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG WMC, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013)). The Court's research, however, indicates that a large number of courts within the Ninth Circuit apply the Ninth Circuit's 25% benchmark in diversity cases. *See Bey v. Mosaic Sales Sols. US Operating Co., LLC*, No. 16-CV-6024-FMO(RAOX), 2020 WL 10816438, at *7 (C.D. Cal. Mar. 2, 2020) (collecting cases). The Court does so here as well.

13

1050.  "The lodestar figure is calculated by multiplying the number of hours the prevailing party

reasonably expended on the litigation (as supported by adequate documentation) by a reasonable

hourly rate for the region and for the experience of the lawyer."  *In re Bluetooth*, 654 F.3d at 941

(citation omitted).  Regardless of whether the court uses the lodestar or percentage approach, the

main inquiry is whether the fee award is "reasonable in relation to what the plaintiffs recovered."

*Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

### B.    Discussion

Class Counsel seeks the Court's approval of a $60,000 attorney's fee award, representing

38% of the Settlement Amount.  ECF No. 89-1 at 22.  Class Counsel argue that the award is

reasonable because they have expertise in class actions and took on a "complex, risky, expensive

and time-consuming litigation on a contingency fee basis."  *Id.*  Class Counsel also contends that

the requested fee award is similar to those made in other cases and that no class members have

objected to it.  *Id.* at 27–28.  After considering these arguments, the Court is not persuaded that

38% of the settlement fund constitutes a reasonable attorney's fees award.

When the Court granted preliminary approval, it commented that, "Class Counsel should

be prepared to support their request" of more than 25% of the settlement fund in their motion for

fees because it represents a significant upward departure from the Ninth Circuit benchmark.  ECF

No. 84 ¶ 16.  Class Counsel has not provided such support.  Instead, counsel argue that

"[a]ttorneys' fees in the amount of 33-1/3% or more of the common fund have been commonly

awarded in the district Courts," ECF No. 89-1 at 23—and then cite cases that do not support that

proposition or even address the question of attorney's fees.

For example, counsel state that the court in *Karapetyan v. ABM Indus.*, Case No. CV 14-

9354-GW(Ex), 2015 U.S. Dist. LEXIS 24210, at *1 (C.D. Cal. Feb. 26, 2015) "award[ed] 33-

1/3% in [a] $5,000,000 wage and hour class action," ECF No. 89-1 at 23, but those are not the

facts of the case, which concerns a motion to remand, not a fee award.  Plaintiffs argue that

*Aguirre v. Genesis Logistics*, Case No. SACV 12-00687-JVS (ANx), 2014 U.S. Dist. LEXIS

184617 (C.D. Cal. Apr. 7, 2014) "award[ed] 33-1/3% in [a] $7,000,000 wage and hour class

action," ECF No. 89-1 at 27–28, but that statement is also false—the court there awarded

United States District Court
Northern District of California

1  attorney's fees in the amount of $234,250.03, and the percentage that fee represented of the class's

2  recovery is unclear.  *Aguirre*, 2014 U.S. Dist. LEXIS 184617, at *10.  Plaintiffs' counsel says that

3  the court in *Grillo v. Key Energy Services, LLC*, No. 2:14-cv-000881-AB-AGR, 2017 U.S. Dist.

4  LEXIS 42682 (C.D. Cal. Oct. 13, 2017) "award[ed] 33-1/3% in [a] $3,000,000 wage and hour

5  class action," ECF No. 89-1 at 23, but that case does no such thing.  Instead, the order in question

6  dismisses a pending civil case without comment.  Finally, Plaintiffs' counsel states that *Shiferaw*

7  *v. Sunrise Senior Living Management, Inc.*, No. 2:13-cv-02171-JAK-PLA, 2016 U.S. Dist. LEXIS

8  187548 (C.D. Cal. Jul. 17, 2017) "award[ed] 33-1/3% in [a] $2,180,000 wage and hour class

9  action," but this too is a misdescription.  That order pertains to plaintiffs' motion to amend class

10  certification; defendants' motion to strike for judgment on the pleadings as to a PAGA claim; and

11  defendants' motion for summary judgment.  The order does not address the question of fees, and

12  the word "fees" appears nowhere in the order.[6]

13        Plaintiffs' counsel's repeated miscitation is troubling.  "Overzealous advocacy is one thing,

14  but it is entirely another to mischaracterize the holding of a case."  *Kalter v. Keyfactor, Inc.*, No.

15  21-CV-1707-L-DDL, 2022 WL 16752977, at *3 (S.D. Cal. Nov. 7, 2022) (quotation marks

16  omitted).  "Counsel has a duty to verify that its citations to legal authority are accurate, and failure

17  to do so not only constitutes ineffective advocacy, but also implicates counsel's reputation and

18  duty of candor to the Court."  *Id.* (citation, quotation, and alterations omitted); *see also Nazos v.*

19

20  _____

21  [6] Later in its brief, Plaintiffs' counsel states that "[i]n analogous wage and hour lawsuits and
   settlements, the Central District Courts have awarded attorneys' fees in amounts equal to or
22  greater than Class Counsel's fee request," citing the same four cases listed above.  The citations
   are no more accurate the second time as they were the first.  Plaintiffs' counsel also cites *Boyd v.*
23  *Bank of Am. Corp.*, Case No. SACV 13-0561-DOC (JPRx), 2014 U.S. Dist. LEXIS 162880, at
   *25 (C.D. Cal. 2014).  That case is distinguishable because the Court based its attorney's fees
24  award in part on "the non-monetary relief obtained for the class members [which] . . . create[d] a
   'special circumstance' justifying greater relief."  2014 U.S. Dist. LEXIS 162880, at *25.  The
25  present settlement contains no similar relief.  Plaintiffs also cite *Taylor v. Shippers Transp.*
   *Express, Inc.*, No. 13-CV-02092-BRO(PLAX), 2015 WL 12658458, at *15 (C.D. Cal. May 14,
26  2015), but that case also involved non-monetary relief.  *See id.* at *15 ("Class members will not
   only receive a gross settlement amount of $11,040,000, but will also be reclassified as employees,
27  which will prevent similar harm from occurring in the future.").

28

United States District Court
Northern District of California

United States District Court
Northern District of California

*Toyota Motor Corp.*, No. CV 22-2214 PA (EX), 2023 WL 4240184, at *4 (C.D. Cal. Mar. 3, 2023) (holding that plaintiffs' reliance on out-of-date authority "calls into question either the care with which Plaintiffs' counsel researches and updates its briefing and argument, or the seriousness with which Plaintiffs' counsel take their duty of candor to the Court").  Certainly these citations do not assist counsel in "show[ing] the kind of exceptional skill or quality of work [that would] warrant a departure from the 25% benchmark." *Lourdes Lefevre v. Five Star Quality Care, Inc.*, No. 5:15-CV-01305-VAP(SPX), 2021 WL 2389884, at *4 (C.D. Cal. Jan. 7, 2021).

The Court next proceeds to conduct a lodestar cross-check.  This analysis requires the Court to take "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "[T]he determination of fees 'should not result in a second major litigation'" and "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437).  Rather, the Court seeks to "do rough justice, not to achieve auditing perfection." *Id.* at 838.

A district court must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (citation omitted).  Additionally, the reasonable hourly rate must be based on the "experience, skill, and reputation of the attorney requesting fees" as well as "the rate prevailing in the community for similar work performed by [comparable] attorneys . . . ." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *amended by* 808 F.2d 1373 (9th Cir. 1987).  To inform and assist the Court in making this assessment, "the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community . . . ." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Class Counsel has calculated a total lodestar of $153,015 that results in a multiplier of 0.39.  ECF No. 89-1 at 29.  Class Counsel's rates range from $850–900 per hour for attorneys with over 20 years of experience; $475–$675 for attorneys with between 10 and 20 years of experience; and $175–$200 per hour for paralegals with over 20 years of experience.  ECF Nos. 92–92-2.  For purposes of the lodestar cross-check, the Court finds that these rates are reasonable.  *See In re*

*Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at \*5 (N.D. Cal. Mar. 17, 2017).

However, the Court has concerns over other aspects of Class Counsel's lodestar.  First, Class Counsel spent 41.7 hours on the unopposed motion for preliminary approval.  ECF Nos. 92 ¶ 6; 92-2 ¶ 14.  Second, Class Counsel estimates that they will spend 27 hours to "[c]lose [o]ut [c]ase."  ECF No. 92 ¶ 6.  These hours are excessive.  Nevertheless, even if the Court were to reduce by half the hours expended on the motion for preliminary approval and to close out the case, the lodestar multiplier would still be less than one, even using the Ninth Circuit's benchmark fee award of 25%.  Thus, for purposes of the lodestar crosscheck, Class Counsel has established that their requested fees are reasonable.  *See Vizcaino*, 290 F.3d at 1051 n.6 (citations omitted) (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the 1.0 to 4.0 range and 54% in the 1.5 to 3.0 range); *see also Taylor*, 2018 WL 6131198, at \*10 ("An implied negative multiplier supports the reasonableness of the percentage fee request.").  Nonetheless, "[t]he fact that the lodestar significantly outpaces an award based on the 25% benchmark . . . is not a compelling reason to depart from the Ninth Circuit's benchmark, particularly absent evidence of exceptional risk or difficulty."  *Brooks v. Life Care Centers of Am., Inc.*, No. SA-CV-12-00659-CJC(RNBX), 2015 WL 13298569, at \*5 (C.D. Cal. Oct. 19, 2015).

For the foregoing reasons, the Court will award Plaintiffs' counsel a benchmark attorney's fee of 25% of the Settlement Amount, or $39,250.

## IV.   COSTS

### A.   Legal Standard

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation marks and citation omitted).  To support an expense award, Plaintiffs should file an itemized list of their expenses by category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826, at \*29–30 (N.D. Cal. Apr. 1, 2011), *supplemented*, No. 06-cv-05778-JCS, 2011 WL 1838562 (N.D. Cal. May 13,

1  2011).

2  **B.    Discussion**

3  Class Counsel seeks reimbursement of $20,809.89 in expenses.  ECF No. 89-1 at 31.

4  Class Counsel has provided itemized lists of the costs and expenses separated by category.  ECF

5  Nos. 89-5, 89-8 ¶ 22.  The expenses are routine costs associated with litigation, including expert

6  fees, mediation fees, filing fees, and service of process fees.  ECF Nos. 89-3 ¶ 65, 89-5, 89-8 ¶ 22.

7  The Court finds Class Counsel's expenses reasonable and grants the request.

8  **V.    SERVICE AWARD**

9  **A.    Legal Standard**

10  "[Incentive] awards are discretionary and are intended to compensate class representatives

11  for work done on behalf of the class . . . ."  *Rodriguez*, 563 F.3d at 958 (internal citation omitted).

12  The Court should consider:

13  > (1) the actions the plaintiff has taken to protect the interests of the
> class; (2) the degree to which the class has benefitted from those
14  > actions; (3) the duration of the litigation and the amount of time and
> effort the plaintiff expended in purs[uing] it; and (4) the risks to the
15  > plaintiff in commencing the litigation, including reasonable fears of
> workplace retaliation, personal difficulties, and financial risks.
16

17  *Wren*, 2011 WL 1230826, at *32 (citations omitted).  Indeed, "courts must be vigilant in

18  scrutinizing all incentive awards to determine whether they destroy the adequacy of the class

19  representatives."  *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

20  **B.    Discussion**

21  Plaintiffs seek incentive awards of $5,000.  Plaintiffs argue that they awards are reasonable

22  because of "their efforts, risks undertaken for the payment of attorneys' fees and costs if the action

23  had been lost, general releases of all claims arising from their employment, stigma upon future

24  employment opportunities for having sued a former employer, as well as the recoveries for every

25  Settlement Class Member . . . , and benefits to current and future employees."  ECF No. 89-1 at

26  32.

27

28

United States District Court
Northern District of California

1

In this district, an incentive award of $5,000 "is presumptively reasonable."[7]  *Harris v.*

2

*Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012).

3

However, when determining if an incentive payment is reasonable, courts consider the

4

proportionality between the incentive payment and the range of class members' settlement awards.

5

*See Burden v. SelectQuote Ins. Servs.*, No. C 10–5966 LB, 2013 WL 3988771, at *6 (N.D. Cal.

6

Aug. 2, 2013).

7

As an initial matter, the Court denies the request for an incentive award to plaintiff Sergio

8

Bernal-Rodriguez.  Although Bernal-Rodriguez is a member of the class, he is not a named

9

plaintiff, and he does not serve the other class members in a representative capacity.  Only "named

10

plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for

11

reasonable incentive payments." *Staton*, 327 F.3d at 977.

12

Turning to the requested award for Sanft, the Court notes that $5,000 is 7.25% of the net

13

settlement received by the class, even after reducing Plaintiff's counsel's attorney's fee, and

14

almost fifty-five times the average amount received by individual class members.  *See* ECF No. 84

15

¶ 17.  The time Sanft spent assisting Class Counsel with the development of information

16

pertaining to the case, such as conducting document review and consulting with Class Counsel on

17

discovery responses, does not compensate for this discrepancy.  The court approves a reduced

18

incentive award of $1,500.

19

**VI.    SETTLEMENT ADMINISTRATION COST**

20

Class Counsel seeks $10,980 in administration costs for ILYM Group.  ECF No. 89-1 at

21

32.  ILYM Group case manager Makenna Snow submitted a declaration outlining the work that

22

ILYM Group performed and will perform to distribute the settlement, including mailing the notice

23

packages and conducting skip tracing on the undeliverable notice packages.  ECF No. 89-7.  The

24

Court finds that the requested costs of $10,980 are reasonable in light of the work that ILYM

25

26

[7] At some point, the common law will have to reckon with inflation.  $5,000 in February 2012, when the *Harris* decision was issued, had the same buying power as $6,773 has today.  Bureau of Labor Stat., CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm (measured

27

as of August 2023).  In light of the already large difference between a $5,000 incentive award and the amount received by individual class members, the Court has not adjusted the incentive award

28

for inflation.

Group has performed and will perform.

## VII.    PAYMENT TO CALIFORNIA LABOR AND WORKFORCE DEVELOPMENT AGENCY

The parties have agreed that $7,500 from the settlement fund will be paid to the California Labor and Workforce Development Agency as civil penalties provided for in the PAGA.  ECF No. 89–1 at 10.  The Court finds this reasonable and approves the payment.

### CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1.      For the reasons set forth in its September 2, 2022 order, ECF No. 84, the Court confirms its certification of the class for settlement purposes only.

2.      The Court grants final approval of the proposed settlement agreement.

3.      The Court grants Class Counsel $39,250, or 25% of the common fund, in attorney's fees.  The Court will withhold ten percent of the awarded attorney's fees and expenses and interest earned thereon until a post-distribution accounting has been filed.  A post-distribution accounting must be filed within 21 days after the distribution of settlement funds.

4.      The Court grants Class Counsel $20,809.89 in expenses.

5.      The Court grants a service award of $1,500 to Plaintiff Sanft.  The request for a service award to Plaintiff Bernal-Rodriguez is denied.

6.      The Court grants $10,980 in settlement administration costs.

7.      The Court grants $7,500 to be paid to the California Labor and Workforce Development Agency as PAGA penalties.

8.      Class members who asked to opt out of the settlement are excluded from the class.

9.      The Court retains continuing jurisdiction over this settlement solely for the purposes of enforcing this agreement, addressing settlement administration matters, and addressing such post-judgment matters as may be appropriate under Court rules and applicable law.

/ / /

/ / /

1        10.    Judgment is hereby entered on the terms set forth above.  The clerk shall close the

2  file.

3        **IT IS SO ORDERED.**

4  Dated: October 16, 2023



                         JON S. TIGAR
                      United States District Judge

United States District Court
Northern District of California